**Mary WASHINGTON, Administratrix of the Estate of Lloyd Washington, Appellant,**

v.

**HOSPITAL SERVICE PLAN OF NEW JERSEY, Appellee.**

**No. 18736.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 4, 1965.

Decided March 25, 1965.

Petition for Rehearing En Banc Denied May 5, 1965.

---

Mr. Theodore E. Lombard, Washington, D. C., with whom Messrs. Paul F. Interdonato and James T. Reilly, Washington, D. C., were on the brief, for appellant.

Mr. Charles J. Steele, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, and FAHY and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

This appeal presents the issues of (1) jurisdiction over the person of appellee, raised by a motion to quash service of process, and (2) the adequacy of the complaint as tested by a motion to dismiss for failure to state a cause of action. The District Court granted both motions. We reverse in each instance.

I

Appellant is the administratrix of one Lloyd Washington, a life-long resident of the District of Columbia prior to his death on January 29, 1963. Through arrangements made by his employer, a foreign corporation doing business in the District, the decedent entered into a contractual agreement with appellee, Hospital Service Plan of New Jersey, whereby decedent was supplied with hospitalization insurance. On December 23, 1962, decedent was admitted to a hospital in the District for medical treatment. Some two weeks later he was informed by the hospital that appellee disclaimed any liability for his expenses. An inquiry was made, apparently after decedent had appealed to his employer, but the only result of this was a formal letter from appellee to decedent, dated January 9, 1963, reaffirming the disclaimer. Upon receiving this letter, decedent insisted on leaving the hospital and going home. There, about two weeks later, he died. That day a letter to him from appellee was received, dated January 25, 1963, informing him that the earlier disclaimer had been mistaken, that he was covered by hospitalization insurance, and that appellee regretted "any inconvenience that may have been caused you in this instance."

Appellee is a New Jersey corporation which has not qualified to do business in the District of Columbia or appointed any agent for service of process here. It has no office or employees in the District, and it sends no salesmen into the District nor otherwise directly solicits business here. It does, however, effect payment of claims in the District in two ways. If the insured is a patient in a District hospital that is a member of the so-called Inter-Plan Service Benefit Bank program administered nationally by the Blue Cross Association, the hospital notifies Group Hospitalization, Inc., a District of Columbia corporation engaged in business here, of the insured's admission and of his discharge. Group Hospitalization, Inc., in turn notifies appellee and also the Blue Cross Association. Bills are submitted directly by the hospital to Group Hospitalization, Inc., and are paid by it. Since appellee is making the same kind of payments in New Jersey for foreign insurers, the Blue Cross Association at its offices in Chicago functions as a clearing house for these payments, offsetting them against each other and adjusting the balances where necessary. This system was operative in this case; and the record shows that the number of District claims against appellee so handled was 143 in 1960, 202 in 1961, 164 in 1962, and 172 in the first ten months of 1963.

If the insured is an outpatient, or if the District hospital to which he is admitted is not a Blue Cross participant, payments are made directly by appellee to the hospital. The number of such payments was 19 in 1959, 26 in 1960, 19 in 1961, 46 in 1962, and 34 in the first ten months of 1963.

The complaint in this action sought damages for appellee's erroneous representation to decedent that his insurance was not in effect. In support of its motion to dismiss, appellee urged in substance that any connection between the

damages claimed and its error was too remote to admit of legal cognizance; and that, in any event, the chain of causation was broken by decedent's intervening decision to leave the hospital, which at the least constituted contributory negligence or risk assumption barring recovery.

## II

Whether appellee can be sued in the District on this claim is a question not without its difficulty, especially since, unlike many jurisdictions, Congress has not acted to eliminate the "doing business" requirement in those situations where the claim arises out of a contract or tort having a substantial connection with the District. Appellee is obviously gratified to have residents of the District as purchasers of the protection it sells. It is equally obvious that, wherever the insurance contracts may technically be said to have been entered into, their performance will normally be in the District, and that the administration of that performance is an essential aspect of appellee's business. Despite all this, however, it may well be true that, in the absence of a long-arm statute of the newer stripe, a jurisdiction which must rest upon the older "doing business" approach cannot be justified solely by reference to such considerations.[1]

We do know, however, that Congress has shown some special sensitivity towards those claims generated by events centering in the District. Section 334 (b) of Title 13 of the D.C.Code refers expressly to such claims and contemplates the existence of a "doing business" jurisdiction as to them even though the foreign corporation has no office or em-

[1] Illinois enacted the prototype of these statutes in 1955, ILL.STAT.ANN. ch. 110, § 17, and other states soon followed suit. E.g., MD.CODE ANN. art. 75, § 95 (1964); N.Y.C.P.L.R. § 302 (1963); see UNIFORM INTERSTATE AND INTERNATIONAL PROCEDURE ACT § 103, in NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS HANDBOOK 221 (1962). The purpose of these acts is to reach nonresidents whose activities within the state give rise to claims there yet do not possess the familar indicia of "doing business." See generally Note, 63 COLUM.L.REV. 1105 (1963).

The UNIFORM ACT provision, of which the Maryland statute is an almost verbatim reproduction, is typically comprehensive:

"SECTION 1.03. [Personal Jurisdic-Based upon Conduct.]

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a [cause of action] [claim for relief] arising from the person's

"(1) transacting any business in this state;

"(2) contracting to supply services or things in this state;

"(3) causing tortious injury by an act or omission in this state;

"(4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; [or]

"(5) having an interest in, using, or possessing real property in this state [; or

"(6) contracting to insure any person, property, or risk located within this state at the time of contracting].

"(b) When jurisdiction over a person is based solely upon this Section, only a [cause of action] [claim for relief] arising from acts enumerated in this Section may be asserted against him."

(Brackets indicate optional provisions.) Like both the Maryland and the Illinois acts, this provision would certainly embrace activities of the kind appellee conducts.

Congress has not yet enacted a general long-arm statute for the District. There is in force here a provision of the familiar kind making the Commissioners of the District of Columbia the agent for accepting service of process for nonresident motorists whose use of the District highways results in accidents here. 40 D.C. Code § 423. And 35 D.C.Code § 102 provides for service of process upon insurance companies that have their principal office elsewhere and fail to appoint a local agent for the acceptance of process by serving the Superintendent of Insurance, but apparently a prerequisite to the availability of this procedure is that the company be licensed to do business in the District.

ployees within the District.[2] We examine the manifestations of appellee's presence here against the background of that legislative concern.

Appellee concededly has none of the familiar indicia of office space, personnel, bank accounts, telephone listings, and so on, which have immemorially been the counters in the jurisdictional game. These presumably might have existed if appellee had acted itself to administer the performance in the District of its contracts with District residents. It appears, however, to have effected that administration in another way, that is to say, through the offices, personnel, and facilities of a sister insurer, Group Hospitalization, Inc., for whom it provides similar expert services in New Jersey.[3] Through this convenient arrangement, effectuated under the brooding omnipresence of the Blue Cross Association, a New Jersey corporation can carry on a business relationship with a District of Columbia resident, involving performance of the contract in the District, without ever appearing to have extended its physical embodiment beyond New Jersey's borders.

■ We are not prepared to say, on the basis of what this record shows with respect to the relationship between appellee and Group Hospitalization, Inc., that there was no projection of appellee's corporate presence into the District of Columbia adequate to support jurisdiction over a claim of this character. On the contrary, we think that presence was sufficiently tangible to require appellee, properly summoned,[4] to answer a District resident in a District court for an alleged dereliction having its immediate impact in the District. The concept of "doing business," although heavily laden with the traditional paraphernalia of bank accounts and telephone listings, in our view still has enough vitality to encompass newer ways of making a corporate presence felt in a particular place for the advancement of the corporation's essential business purposes.

### III

Appellant's complaint has its highly ambivalent aspects, as might be expected from the fact that its opening characterization is "Tort-Arising Out of Contract." It appears to allege in so many words that appellee's error contributed to decedent's death, although at the oral argument appellant's counsel seemed disinclined to state his cause of action in these terms.[5] That claim would, of

---

2. 13 D.C.Code § 334(b) provides:
   "When a foreign corporation transacts business in the District without having a place of business or resident agent therein, service upon any officer or agent or employe of the corporation in the District is effectual as to actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District."
   The words "transacts business" have been held to mean "doing business." Bilbrey v. Chicago Daily News, 57 F.Supp. 579 (D.D.C.1944).

3. It is true that appellee does not appear to rely upon Group Hospitalization, Inc., in connection with outpatients or those in non-Blue Cross hospitals. But the figures given above indicate that claims of this character are few compared to those serviced by Group Hospitalization, Inc.

4. The manner of service of process in this case does not clearly appear from the papers before us. However, in a supplemental memorandum submitted after argument, appellant makes reference, although somewhat inexactly, to 29 D.C. Code § 933i(c), which provides in pertinent part:
   "If any foreign corporation shall *transact business* in the District without a certificate of authority, it shall, by transacting such business, be deemed to have thereby appointed the Commissioners its agent and representatives upon whom any process, notice, or demand may be served. * * *"
   Since appellee's reply memorandum does not comment on this point, we treat the issue of the manner of service as not before us.

5. In its reply memorandum filed after argument, appellee relies upon this reluctance as supporting the dismissal. It contends that, if appellee is not charged

course, present an understandable theory, whatever difficulties of proof it might entail. The complaint also advances other elements of damage founded upon difficulties and hardships assertedly caused by decedent's having to spend his last few days on earth at his home rather than in a hospital. These are somewhat more elusive, at least on the limited record before us.

The District Court did not identify its reasons for dismissing the complaint. Having first ordered the service of process quashed, the dismissal could have been an inevitable sequel to that action. We do know that appellee now justifies dismissal on the general grounds of remoteness, on the one hand, and contributory negligence or assumption of risk, on the other. Taking the complaint as it stands, however, we cannot say that any of these possible reasons warranted striking the complaint at this stage. It may well be that appellant faces peculiarly difficult problems of proof in respect of both causation and damages, but a cause of action does not fail in theory solely because its prospects of success are problematical.

We are quite clear that doctrines of contributory negligence or assumption of risk do not warrant dismissal of the complaint at this stage of the litigation. Appellee's stock in trade is the peace of mind it represents as assured by the knowledge that the catastrophe of illness, especially for people of slender means, will not be compounded by concern over how the often crushing weight of hospital expenses is to be borne. When the decedent in this case was told not once but twice that appellee denied any liability, we do not think it can be said as a matter of law that he must be taken to have left the hospital at his sole peril. He presumably would not have been there in the first place but for his acceptance at their face value of appellee's claims as to the prudentiality of hospitalization insurance. This proposition strikes us as oddly at variance with the public image of the mission of businesses like appellee's. But, in any case, if appellee wishes to continue to ventilate it, it should be in the context of the ascertainment at trial of all the relevant facts.

We are, we repeat, in some doubt as to just what theory appellant expects to pursue; and it may be that further pretrial proceedings will illuminate it further to her good or ill. All we now hold is that there was jurisdiction, and that we cannot discern from what is before us an adequate justification for dismissing the complaint. We reverse and remand for further proceedings not inconsistent herewith.

It is so ordered.

---

with causing death but only pain and suffering, the statute denies recovery, at least in a tort action. 12 D.C.Code § 101. This provision may in fact prove to be an obstacle, but the situation is too confused for us to rest upon it as a reason for affirmance.