**Daniel PRICE et al., Appellants,**

**v.**

**Bennett H. GRIFFIN, Appellee.**

**No. 7210.**

District of Columbia Court of Appeals.

Argued Nov. 27, 1973.

Decided June 23, 1976.

Fickling, J., concurred in result.

Benjamin W. Cotten, Washington, D.C., for appellants.

Daniel H. Crowley, Washington, D.C., for appellee.

Before REILLY, Chief Judge, and KELLY and FICKLING, Associate Judges.

REILLY, Chief Judge.

This is an appeal from a judgment for damages in an action against a foreign corporation and two individuals, charging violation of the Blue Sky Law [1] and other fraudulent acts in connection with the sale of stock in a foreign corporation. The principle assignments of error on appeal are directed at (1) refusal to quash service of process on the corporate defendant; (2) failure to instruct the jury on the necessity of proving reliance on the alleged misrepresentations; and (3) an award of punitive damages.

The appellee, the plaintiff who brought this action, is an aviation consultant, who has had extensive experience in all phases of the aircraft industry. In a career which began when aviation was still in its infancy, the plaintiff served as a military pilot in both World Wars, was an early trans-Atlantic flyer and a commercial pilot between wars. He was later employed by the Federal Aviation Administration as a field flight inspector and then as director

1. D.C.Code 1973, § 2–2401.

of an airport. Throughout his career, he has maintained a professional interest in the latest developments in aeronautical engineering.

One of plaintiff's personal friends and business associates was V. J. Burnelli —originator of the "Burnelli principle", the promotion of which gave rise ultimately to this lawsuit. The Burnelli principle is basically the design of an airframe calculated to give the plane an accelerated lift, thereby enabling such aircraft to take off and land on much shorter runways than conventionally designed passenger airships require. During the 1950's and 60's, Griffin was involved in a corporate effort to manufacture planes designed in accordance with the Burnelli principle. This organization, known as the Ballard-Burnelli group, constructed a prototype in Canada, but went out of business because of financial problems sometime in the early 1960's before any marketable airframes were produced.

In May or June of 1969, plaintiff was introduced to appellant Daniel Price by another friend, Charles Fredericks, a flight test engineer. Price was promoting development of a Burnelli plane and had been instrumental in founding Occidental Aircraft International S/A in Luxembourg. Fredericks was a vice president and a director of the new corporation, and Price carried a business card listing him as managing director. Through them, plaintiff later met Herman Price, president of an affiliated company incorporated here as the Occidental Aircraft Corporation, which owned the Burnelli patent. This company had recently executed a licensing agreement with the Luxembourg corporation under which the latter was authorized to utilize such patent in the manufacture of particular models, the licensor to receive a specified royalty for each airframe produced and sold.

As a result of optimism expressed by Fredericks and the Price brothers in the prospectus of the new venture, the plaintiff conferred with the trio several times in Washington that summer to learn more about the details of the project and indicated that he would like to participate. Price informed him that his name would be submitted to the board of the corporation for nomination as a director. The foreign corporation had already published a brochure and a list of its officers and directors in Brussels, although plaintiff was told at that time that the corporation had not yet qualified to do business in Belgium.

A few weeks later, Daniel Price and Fredericks told the plaintiff that a public offering of the stock at $10 a share would be made abroad as soon as clearance could be obtained from the Belgian authorities, and advised him to invest. On October 13, 1969, Griffin drew a check payable to the Luxembourg corporation in the amount of $10,000, for which he was to receive a certificate for 1000 shares. The plaintiff later testified that he had insisted, and Price had agreed, to hold the money in escrow until the Belgian government had approved the offering and the stock was actually issued.

According to the testimony at the trial, permission to market the stock abroad was never granted—apparently the Brussels authorities finding that the Luxembourg corporation did not have sufficient assets to qualify. Two of the defendants' witnesses testified that this conclusion was reached because a foreign appraiser reported that after inspecting some coal fields owned by the corporation in West Virginia, he had placed a much smaller value on them than that shown in the corporate statement of assets. As a result, no stock was issued and the venture came to a halt. Nevertheless, plaintiff's check was cashed and the proceeds were never returned to him.

In bringing this action against both Daniel and Herman Price, and Occidental Aircraft International, the plaintiff sought damages under the District of Columbia

Blue Sky Law[2] and on the ground of fraud. Specifically, Griffin alleges that the defendants intentionally misled him as follows: he was told that (1) his money would be doubled or tripled in a matter of weeks; (2) Herman was investing $200,000 in the venture; (3) there were no serious financial or governmental hurdles that could prevent production; and (4) his check would be held in escrow until the foreign authorities cleared the stock issuance or returned to him if such clearance was withheld.

After the evidence was in, the jury was instructed to base its determination of possible liability of Daniel Price and Occidental International on the Blue Sky Law, and to consider the conduct of Herman Price solely on the question of whether it amounted to fraud at common law. The jury returned a verdict against Daniel and the corporate defendant in the amount of $10,000 in compensatory damages and $7,500 in punitive damages, and awarded the sum of $2,500 in punitive damages against Herman.

*Service of Process*

The first issue raised by the appellants is a challenge to the service of process upon Occidental International,[3] which consisted of serving a summons here on Daniel Price in his capacity as a representative of the corporation. Appellee relies on D.C. Code 1973, § 12–334(a)[4] which provides that process upon foreign corporations doing business in the District of Columbia can be served upon a person conducting the corporation's business. Thus, we must decide (1) whether the Luxembourg corporation was "doing business" in the District, and (2) whether Daniel Price was conducting its business.

█ While it is clear that no airplanes were manufactured or sold here by Occidental International, we hold that its activities here did amount to "doing business" under the standards enunciated by the Supreme Court in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199,

2. D.C.Code 1973, § 2–2401 *et seq.* The sections relating to securities fraud provide as follows:

§ 2–2402. Fraud.
It shall be unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly—

(a) to employ any device, scheme, or artifice to defraud;
(b) to make any untrue statement of a material fact, or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they are made, not misleading; or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
§ 2–2413. Civil liabilities.
(a) Any person who—

.    .    .    .    .

(2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . shall be liable to the person purchasing such

security from him, and the purchaser may bring a civil action to recover the consideration paid for the security with interest thereon and with costs and reasonable attorney fees less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owners the security. For this purpose damages shall be the amount that would be recoverable upon a tender, less the market value of the security when the buyer disposed of it and interest from the date of disposition.

3. Occidental International filed a pretrial motion to quash service of process pursuant to Super.Ct.Civ.R. 12(b)(4), which motion was denied.

4. § 13–334. Service on foreign corporations.
(a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person *conducting its business*, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

2 L.Ed.2d 223 (1957); and *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Granted the difficulty of formulating any hard and fast rule as to what constitutes "doing business", it seems clear nevertheless that any continuing corporate presence in the forum state directed at advancing the corporation's objectives is sufficient for the exercise of jurisdiction. The record shows that Occidental International had a business office in the District, staffed by the managing director of the corporation, had sold some stock here and had conducted some of its negotiations for appointment to its board of directors and the patent licensing agreement in this city.[5]

In *Origoni v. Bulletin Co.,* 258 F.Supp. 359 (D.D.C.1966), the court denied a motion to quash service on a Pennsylvania corporation, noting that the foreign corporation maintained a suite of offices in the District. In *Black & Company v. Nova-Tech, Inc.,* 333 F.Supp. 468 (D.Ore.1971), jurisdiction over an out-of-state corporate defendant was predicated on the sale of its securities in the forum state. *Accord, National Life of Florida Corp. v. Superior Court,* 21 Cal.App.3d 281, 98 Cal.Rptr. 435, (1971). *See also Washington v. Hospital Service Plan of New Jersey,* 120 U.S.App. D.C. 211, 345 F.2d 105 (1965).

■ It is also manifest that throughout the period under consideration, Daniel Price held himself out as the managing director of Occidental International. The record includes a calling card, stationery, and a list of the corporation's officers and directors, in which Price is referred to by this title. As the agent of the corporation, Daniel Price was empowered to bind the corporation in a sale of stock, and he accepted funds from the plaintiff to that end. There can be no question, therefore, that Daniel Price was doing business here on behalf of Occidental International, and was a proper person upon whom to serve process. Thus, the motion to quash service was correctly denied.[6]

### Applicability of Statute

■ Appellants Daniel Price and the corporation also contend that the statute which they were charged with violating was inapplicable to them because § 2–2413, the section of the Code defining civil liability, is only one provision of a chapter entitled "Security Agents and Brokers" and neither was an "agent" or "broker-dealer" within the meaning of § 2–2401. This may be true but it is immaterial, for the subsection under which recovery was granted has a broader scope. It reads in pertinent part:

§ 2–2413. * * *

(a) Any person who—

\* \* \* \* \* \*

(2) offers or sells a security by means of any untrue statement of a material fact . . . .

### Reliance under the Blue Sky Law

In challenging the judgment for damages against Daniel Price and the corporate defendant, predicated upon a representations violation of the District Blue Sky Law, appellants argue that plaintiff below was a sophisticated investor, not only familiar

---

5. The executed agreement so discloses on its face. The record also contains an excerpt from a press conference reported by The Washing Star, in which the vice president of the corporation explained the engineering principles of the novel plane the corporation planned to make.

6. Appellants also contend that, while Daniel Price may have been the agent of Occidental International when the stock was sold, he was no longer acting as agent at the time of service. This argument is without merit for there is a presumption that Price's status as an agent continued after sale of the stock and absent any contrary evidence, Price is presumed to be the agent at the time of service.

with the Burnelli patent, but experienced in a prior venture to apply its principles to airframe design. Possessed of such special knowledge, appellee, they contend, could not possibly have relied upon any of appellants' alleged misrepresentations. This raises a question of first impression in this jurisdiction—the necessity of proving reliance in a suit under the local act—an issue which has provoked comment [7] in law reviews and litigation under corresponding provisions of the Federal Securities Act of 1933 and regulations of the Securities & Exchange Commission.[8]

The leading case for the proposition that proof of reliance is a necessary element to recover under the statutory cause of action is *List v. Fashion Park, Inc.*, 340 F.2d 457 (2d Cir. 1965), *cert. denied, sub nom. List v. Lerner*, 382 U.S. 933, 86 S.Ct. 305, 15 L.Ed.2d 344 (1965). This was a 10b–5 action brought by a stockholder who sold his shares in Fashion Park at a considerable profit, but later discovered that at the time of the sale the board of that corporation was negotiating a merger which, when consummated, resulted in a higher price for the outstanding shares than the figure plaintiff had realized. One of the directors of Fashion Park purchased some of plaintiff's stock, reaping a windfall when the merger went through, and the suit alleged a scheme to defraud for failure to disclose the pending merger and its terms. The Second Circuit affirmed a dismissal of the action on the ground that the plaintiff had failed to prove that in selling his stock he relied on the material omission charged. The opinion states:

> This interpretation of Rule 10b–5 is a reasonable one, for the aim of the rule

in cases such as this is to qualify, as between insiders and outsiders, the doctrine of *caveat emptor*—not to establish a scheme of investors' insurance. Assuredly, to abandon the requirement of reliance would be to facilitate outsiders' proof of insiders' fraud, and to that extent the interpretation for which the plaintiff contends might advance the purposes of Rule 10b–5. But this strikes us as an inadequate reason for reading out of the rule so basic an element of tort law as the principle of causation in fact. [340 F.2d at 463.]

The actual holding in *List, viz,* that positive proof of reliance is not required where an insider fails to disclose a material fact, seems to have been disapproved by the Supreme Court in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). That decision left untouched the basic doctrine of the *List* case, *viz*, that the supposedly false representation must be the probable cause of plaintiff's injury.[9]

*List v. Fashion Park* interprets SEC Rule 10b–5 in light of the common law action for fraud or deceit, requiring evidence of reliance on the defendant's misrepresentation. *See Isen v. Calvert Corp.*, 126 U.S.App.D.C. 349, 379 F.2d 126 (1967). The thesis is that the plaintiff's damage must actually be caused by the defendant's wrongdoing: "The false representation must have played a material and substantial part in leading the plaintiff to adopt his particular course." W. Prosser, Law of Torts, § 108 at 714 (4th ed. 1971).

■ While we recognize that the actual holding in *List v. Fashion Park, supra,* has

---

7. *See, e. g.,* Note, *The Reliance Requirement in Private Actions under SEC Rule 10b–5,* 88 Harv.L.Rev. 584 (1975); Stoll, *Reliance as an Element in 10b–5 Actions,* 53 Ore.L.Rev. 169 (1974).

8. D.C.Code 1973, § 2–2402, is substantially equivalent to SEC Rule 10b–5, 17 C.F.R. 240.10b–5. D.C.Code 1973, § 2–2413(a), *supra,* closely parallels § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2).

9. *Affiliated Ute* also dealt with an action under SEC Rule 10b–5. There, some bankers, acting as transfer agents, picked up stock from a group of Indians without disclosing to them a higher price at which the same securities were being traded in a market fostered by the bank. Plainly, it was the failure to disclose that caused the unsophisticated stockholders to sell at a submarket price.

been questioned [10] and may not be appropriate in all cases, as a general proposition, recovery should not be allowed on a mere showing that a representation made by a seller of securities was inaccurate if the sale was made under circumstances [11] showing that such misrepresentation was not one which caused the investor to enter into the transaction. Accordingly, we have concluded that in an action under the local Blue Sky Law, D.C.Code 1973, § 2–2401, where the complaint alleges certain misstatements, in contradistinction to a failure to disclose a material fact, some element of reliance must be shown to demonstrate that such statements caused the injury complained of.

■ Applying this rule to the case before us, we find insufficient evidence in the record to conclude that the plaintiff in delivering a check payable to the foreign corporation did so in reliance on the representations enumerated and described as untrue in the complaint. In the complaint, it was alleged that Occidental had not acquired rights to the Burnelli or Custer Wing concepts or patents. Had this allegation been proved, plaintiff would have presented the court with another case of the typical stock swindle. But as this allegation was disproved by documents in pretrial discovery, plaintiff dropped this par-

ticular charge before the case was submitted to the jury. His own direct testimony, when considered with his disclaimers on cross-examination and his prior experience with the difficulties of financing another experimental aircraft manufacturing company, falls short of evidence upon which a jury could have inferred that he made his investment because he was told that, if he bought stock, his money would double or triple, that the public offering would be approved by the Belgian authorities, that the success of the venture was certain, or that appellant Daniel Price's problems with the Securities & Exchange Commission had been cleared up.

■ In only one respect can the jury verdict for compensatory damages in plaintiff's favor be sustained. This is because the jury did have testimony before it concerning one alleged misrepresentation which it might have believed, although contradicted by the witness to whom it was attributed.

Appellee Griffin testified that, prior to drawing his check, he got Daniel Price to agree that any money Griffin invested in Occidental Aircraft International would be held in escrow pending approval of the public offering abroad of the stock issue and such money would be returned to him if the stock was not issued. This testimo-

10. The case law in this area is exceedingly disparate and there is little room for generalization. Some opinions have found reliance to be encompassed by a showing of materiality to a reasonable shareholder, *see, e. g., Kohn v. American Metal Climax, Inc.,* 458 F.2d 255 (3d Cir. 1972), but it seems that such an approach would be appropriate only when the suit is brought on behalf of a class of plaintiffs. In a Second Circuit case subsequent to *List,* the court held that reliance need not be shown because causation in fact had been demonstrated. *Vine v. Beneficial Finance Co.,* 374 F.2d 627 (2d Cir. 1967). In *Johns Hopkins University v. Hutton,* 422 F.2d 1124 (4th Cir. 1970), a suit to rescind a stock purchase, the court at first inclined toward the view that no showing of reliance was required, but in a later opinion in the same case, ruled that the plaintiff must prove some degree of reliance. 488 F.2d 912 (4th Cir. 1973).

11. Such circumstances take into account the relative business background and knowledge of the parties to the challenged sale. As one United States Court of Appeals remarked in a cognate case—

Furthermore, honesty and fairness permit consideration of the actual and normal business acumen of the seller. Here, the company could fairly deal with a person who had had many years of intimate acquaintance with the affairs of the corporation, who was closely related to many principals of the corporation, who had extrinsic sources of sound business advice, and who himself was promoting a speedy sale, in a manner that might not be fair if plaintiff had been a novice to stock transactions or the corporation's activities. *Kohler v. Kohler Co.,* 319 F.2d 634, 641–42 (7th Cir. 1963).

ny was corroborated in part by a notation on the face of the instrument and also by testimony from another witness that at least one other local investor had his money returned to him when the stock issue failed to secure official clearance. Griffin testified that he would not have made the investment had he not received this assurance. It should be noted, however, that this version of the transaction is inconsistent with any theory of reliance on the other challenged representations, for plaintiff would scarcely have imposed this condition if he had been taken in by the glib assurances ascribed to Daniel Price. The plaintiff is therefore entitled to relief under D. C.Code 1973, §§ 2–2402 and 2413, and we affirm the award of $10,000 in compensatory damages, plus costs and attorney's fees.[12]

### Punitive Damages

The jury awarded the plaintiff $7,500 in punitive damages against Daniel Price and Occidental International, and $2,500 in punitive damages against Herman Price. The award as to Daniel Price and Occidental International is based on relief under the Blue Sky Law, and the award as to Herman Price is based on common law fraud. The appellants argue (1) punitive damages are not recoverable under D.C.Code 1973, § 2–2401 *et seq.*, and (2) as to Herman Price, the award is erroneous because under the instructions of the trial court, punitive damages are not recoverable in the absence of compensatory damages.

We note that federal courts have denied recovery of punitive damages in SEC R. 10b–5 actions. *Globus v. Law Research Service, Inc.,* 418 F.2d 1276 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). The local Blue Sky Law, like that of most jurisdictions, is silent as to the question of punitive damages, and its proviso is not so lacking in ambigu-

ity that we are compelled to hold that it confers a more drastic measure of damages than the corresponding federal rule. Subsection (h) of § 2–2413 reads:

> The rights and remedies provided by this chapter shall be in addition to any other rights or remedies that may exist at law or in equity, but this chapter shall not create any cause of action not specified in this or section 2–2404(e). . . .

■ Punitive or exemplary damages are not a favorite of the law. *Brown v. Coates,* 102 U.S.App.D.C. 300, 253 F.2d 36 (1958); *Gombos v. Ashe,* 158 Cal.App.2d 517, 322 P.2d 933 (1958); *White v. Doney,* 82 Idaho 217, 351 P.2d 380 (1960). Such an award is proper only when the tort is aggravated by "evil motive, actual malice, deliberate violence or oppression." *Black v. Sheraton Corp. of America,* 47 F.R.D. 263 (D.D.C.1969). A showing of ordinary negligence, absent any proof of exacerbating circumstances, will not support an award of punitive damages. *Washington Garage Co. v. Klare,* D.C.App., 248 A.2d 681 (1968). While it has been held that the granting of punitive damages is a matter for the trier of fact, *Franklin Investment Co. v. Homburg,* D.C.App., 252 A.2d 95 (1969), such an award will not be sustained on appeal unless supported in the record. *See, e. g., Washington Garage Co. v. Klare, supra.*

■ The record in the case before us does not contain special aggravating circumstances of the kind necessary to justify a verdict for punitive damages. As to Herman Price, his connection with the venture was merely tangential—he was part-owner of Occidental Aircraft, Inc., which stood to profit if the foreign-based Occidental International prospered—and there is no evidence that he induced the plaintiff to invest his money. While it is true that his brother, Daniel, pressured

---

12. D.C.Code 1973, § 2–2413(a) specifically allows for an award of attorney's fees, unlike the federal counterpart, Sec. 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2).

Griffin to invest, the record makes clear that Daniel was sincere in his advocacy of the Burnelli principle as of vast economic potential. The plaintiff, himself, at trial, testified in glowing terms as to the revolutionary effect this theory could have on the aviation industry. Daniel Price's lack of malice or bad faith is further shown by evidence that he lost some $30,000 when the project collapsed. Insofar as the escrow agreement is concerned, and Daniel Price's breach thereof, the plaintiff proved only that there was an agreement and that it was breached. Such proof falls short of any showing of recklessness or wholesale disregard of the interest of investors.

We, therefore, set aside the award of punitive damages as to all the appellants.

*Affirmed in part and reversed in part.*

FICKLING, J., concurs in the result.