**William H.P. KING, Appellant,**

v.

**KIRLIN ENTERPRISES, INC. and John P. Kirlin, Appellees.**

Nos. 91–CV–1114, 92–CV–1180.

District of Columbia Court of Appeals.

Argued April 6, 1993.

Decided June 10, 1993.

Eric M. May, Washington, DC, for appellant.

Kelly A. Saunders, Washington, DC, for appellees.

Before SCHWELB and FARRELL, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

Appellant William H.P. King filed suit against appellees Kirlin Enterprises, Inc.

and John P. Kirlin, individually, for damages arising out of an automobile accident. The suit alleged negligence and assault and battery. On the latter charge, King sought both compensatory and punitive damages. After hearing the testimony, the trial judge denied King's request to submit the issue of punitive damages to the jury.

On September 11, 1991, the jury awarded King $25,000 in damages on the negligence claim and $20,000 in damages on the assault and battery claim. King now appeals the trial judge's refusal to submit the issue of punitive damages to the jury, claiming there was substantial evidence from which the jury could have inferred that Kirlin intended to injure appellant and so engaged in the sort of deliberate violence that may support punitive damages. King also appeals from the denial of his motion to assess one-half of the transcript costs for the second deposition conducted of his expert witness.

We reverse the trial judge's ruling denying King's request to submit the punitive damages claim to the jury and order a new trial solely on the issue of punitive damages. We affirm the denial of King's motion for costs.

### I. *The Facts*

On July 29, 1989, King was travelling southbound on 23rd Street, N.W., in his Ford Pinto, and stopped at a red light at the intersection north of Washington Circle. Kirlin, who was also travelling southbound on 23rd Street in his Jeep Cherokee, pulled up in the left lane adjacent to King and partially angled his vehicle in front of King's. The parties disputed the events from this point on.

King testified that when the light changed he drove into the right lane to avoid being blocked by Kirlin's vehicle. As he proceeded around Washington Circle, Kirlin's vehicle sped up and cut directly in front of his car, coming to an abrupt stop. At this point King changed lanes and passed Kirlin's vehicle. King completed his turn onto 23rd Street, N.W., pulled into the right curb lane, put on his emergency flashers, and stopped. While he was parked, Kirlin's vehicle slammed into the rear of his car.

Kirlin, by contrast, testified that as he approached Washington Circle, King cut off the driver beside Kirlin, causing Kirlin to apply his brakes. As Kirlin changed lanes and entered the right-hand lane toward 23rd Street, King passed Kirlin's vehicle and raised his left hand, making a provocative gesture with his middle finger. According to Kirlin, as he left the circle and entered 23rd Street, he looked up and unintentionally rear-ended King's stopped vehicle.

King testified that, as he stepped out of his car to assess it for damages, Kirlin rushed from his car and began punching him in the head and face while shouting racial epithets and obscenities. King stated that because he feared for his life, he reached for a knife that he carried in a case on his belt, and raised it in a horizontal position in front of Kirlin's face. Kirlin desisted, and King put the knife back in his vehicle. An eyewitness, Cheryl Glickfeld, testified that Kirlin then went to his vehicle to call the police on his car phone and that, after having done so, he initiated a second attack against King by striking him again. In response, King punched Kirlin, who fell against his own vehicle.[1]

After all of the evidence was presented, the trial judge denied King's request for a jury instruction on the issue of punitive damages because, in her view, there was no showing by King (1) that he suffered severe physical injuries from the altercation, or (2) that Kirlin had deliberately set out to inflict injury or emotional anguish upon King.

---

1. Kirlin gave a different version of the post-collision events. He stated that after he made contact with King's vehicle, he approached King and thought he saw a gun in King's hand as King was trying to get out of his car. Afraid of being shot, Kirlin struck King in an attempt to keep him inside of his vehicle. When he realized that King had a knife rather than a gun, he stopped hitting King and backed away from him while still facing King's direction to thwart a potential knife attack. At this point, King struck Kirlin three times, causing Kirlin to suffer a bloody nose and a cut lip.

## II. *The Claim for Punitive Damages*

"It has been said that punitive damages are not favored, but the rule is well-established in this jurisdiction that a jury may assess punitive damages in the proper case." *Wanis v. Zwennes,* 364 A.2d 1193, 1195 (D.C.1976) (footnotes omitted). The fact that punitive damages "are not a favorite of the law," *Price v. Griffin,* 359 A.2d 582, 589 (D.C.1976), is reflected in the aggravated nature of the defendant's conduct (and, inferentially, state of mind) that must be shown to justify an award. With regard to a claim of assault such as King alleged (and proved) in this case, we have stated: "Punitive damages are not allowable in every case of assault and battery. They are allowable only where there is evidence of actual malice, wanton conduct, deliberate violence, or intent to injure." *Wanis,* 364 A.2d at 1195. We have used similar formulations elsewhere, stating, for example, that "[i]n general, punitive damages may be awarded for tortious acts aggravated by evil motive, actual malice, deliberate violence or oppression, or for outrageous conduct ... in willful disregard for another's rights." *Robinson v. Sarisky,* 535 A.2d 901, 906 (D.C.1988) (citations and internal quotation marks omitted). But while the substantive test for punitive damages is a demanding one, we have repeatedly recognized that a plaintiff's request to submit the issue of punitive damages to the jury is governed by the normal test for a triable issue of fact: whether there was evidence from which a jury reasonably could find the required malicious intent or willful disregard of another's rights. *Id.* at 907; *Parker v. Stein,* 557 A.2d 1319, 1321 n. 5, 1322 (D.C.1989); *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.,* 414 A.2d 834, 842–43 (D.C.1980). *See also Central Armature Works, Inc. v. American Motorists Ins. Co.,* 520 F.Supp. 283, 293–94 (D.D.C.1980). In answering that question, we view the evidence in the light most favorable to the party seeking punitive damages, *Robinson,* 535 A.2d at 907, bearing in mind that "[t]he requisite state of mind need not (and usually cannot) be proved by direct evidence, but may be inferred from all the facts and circumstances of the case." *Id.* at 906.

Viewing the evidence in this case in accordance with these standards, the jury reasonably could have found that Kirlin's automobile sped up and cut directly in front of King's car, coming to an abrupt stop. King changed lanes, passed Kirlin's car, and pulled into the right curb lane where he parked his car and put on. his emergency flashers. Kirlin then rear-ended King's parked car. When King tried to get out of his car, Kirlin rushed him and began punching him repeatedly in the head and face while shouting racial slurs and obscenities.[2] Kirlin did this twice, the second time after returning from his car to call the police on his car phone. The eyewitness Cheryl Glickfeld confirmed that Kirlin "immediately flung open his door, came out of it and lunged toward Mr. King and hit him as hard as he could," and that Kirlin was "very aggressive, very upset and very agitated." She added that Kirlin "was just trying to hurt Mr. King as much as he could. And he punched him and then he kept trying to punch him again." If believed by the jury, this evidence would support a reasonable finding that Kirlin harbored an "evil motive" toward King and engaged in "deliberate violence" against him. Indeed, a jury could find that Kirlin initiated a second assault without any provocation. This case is thus quite unlike *Wanis, supra,* relied on by Kirlin, in which the record contained no evidence that the defendant had struck the plaintiff or manifested "an intent to injure her." 364 A.2d at 1195. Glickfeld's testimony here, if credited, permitted the conclusion that Kirlin meant to "hurt Mr. King as much as he could."[3]

---

2. King testified that "Mr. Kirlin rushed up from his vehicle, jumped on me, viciously attacked me, punching me to the head and face area, shouting obscenities, you black motherfucker, I'll kick your nigger ass, I'll kick your nigger son-of-a-bitch ass."

3. The severity of King's injuries, while evidence of the Kirlin's intent to injure (and thus probative of malice), is irrelevant to the propriety of punitive damages. King only needs to prove nominal damages in order to recover punitive damages. *Robinson,* 535 A.2d at 907.

We do not doubt that King's testimony was highly impeachable—and was impeached—by evidence, for example, that he had been involved in previous accidents as a taxicab driver for which he sued and claimed injuries similar to those he now asserts. But his testimony, particularly corroborated as it was, cannot be said to have been inherently incredible, *Baltimore v. B.F. Goodrich Co.*, 490 A.2d 642, 644 (D.C.1985), nor did the trial judge so find. For these reasons, we are constrained to reverse the trial judge's refusal to submit the issue of punitive damages to the jury.

### III. *Deposition Costs Imposed as Sanctions*

■ King intended to call his psychiatrist as an expert witness at trial. Counsel for appellees had received the psychiatrist's medical reports on King through March of 1991. They learned two days before trial that King's psychiatrist had made additional reports after March of 1991 which the parties had not reviewed, and which had not been given to Kirlin in discovery. The trial judge allowed Kirlin to take a second deposition of King's psychiatrist, which took place on August 30, 1991, after trial had recessed for the day.

King argued to the trial judge that appellees' counsel improperly questioned King's psychiatrist about opinions and reports previously encompassed by the earlier deposition. As a result, King requested that appellees be made to pay one-half of both the deposition costs and his attorney's fees. The trial judge denied this request and ordered King to pay the costs of the second deposition in the amount of $3,223.50 as a sanction for the late identification of expert records and opinions held by King's expert witness.

The trial judge did not abuse her discretion in awarding these fees to Kirlin for the second deposition. "Discovery sanctions are particularly committed to the trial court's discretion." *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1261 (D.C.1979). Su-

per.Ct.Civ.R. 37(b)(2) expressly permits an award of attorney's fees "[i]n lieu of" the other sanctions prescribed by the rule for violation of discovery orders. Here, the judge denied Kirlin's motion to exclude Dr. Booth from testifying at trial because of the violation, but sought to remedy the situation by allowing appellees to take Dr. Booth's deposition for the second time, and requiring King to pay the costs associated with the supplemental deposition. The judge found that King had failed to produce the medical and psychiatric records of his expert witness in a timely manner by producing the information two days before trial. In these circumstances, we are altogether unsympathetic with King's argument that Kirlin's attorney reploughed old ground, as it were, in the course of a new deposition made necessary by King's default. We conclude that the judge was within her discretion in awarding attorney's fees against King for breach of the discovery order.[4]

### IV. *Conclusion*

We reverse the trial court's refusal to submit the issue of punitive damages to the jury and order a new trial on that issue. We affirm the trial court's award of attorney's fees to appellees as a sanction.

*So ordered.*

---

**4.** In view of our decision to order a new trial on damages, we agree with King's suggestion at oral argument that his challenge to the trial court's determination with respect to King's en-

titlement to costs otherwise, see Super.Ct.Civ.R. 54(d), is premature and need not be considered at this time.