**FEDERAL HOUSING FINANCE AGENCY, Plaintiff,**

v.

**HSBC NORTH AMERICA HOLDINGS INC., et al., Defendants;**

**And other FHFA cases.**

Nos. 11 Civ. 6189(DLC), 11 Civ. 6190(DLC), 11 Civ. 6192(DLC), 11 Civ. 6193(DLC), 11 Civ. 6195(DLC), 11 Civ. 6198(DLC), 11 Civ. 6200(DLC), 11 Civ. 6201(DLC), 11 Civ. 6202(DLC), 11 Civ. 6203(DLC), 11 Civ. 6739(DLC), 11 Civ. 7010(DLC).

United States District Court,
S.D. New York.

Dec. 16, 2013.

Securities Corp., Mortgage IT Securities Corp.

David H. Braff, Brian T. Frawley, Jeffrey T. Scott, Sullivan & Cromwell LLP, New York, NY, for defendants Barclays Bank PLC, Barclays Capital Inc., Securitized Asset Backed Receivables LLC, Paul Menefee, John Carroll, and Michael Wade.

David Blatt, John McNichols, Williams & Connolly LLP, Washington, DC, for Defendants Bank of America Corporation; Bank of America, N.A.; Asset Backed Funding Corp.; Banc of America Funding Corp.; Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., First Franklin Financial Corp., Merrill Lynch Mortgage Investors, Inc., Merrill Lynch Government Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Inc.

Richard H. Klapper, Theodore Edelman, Michael T. Tomaino, Jr., Tracy Richelle High, Sullivan & Cromwell LLP, New York, NY, for Defendants Goldman, Sachs & Co., GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., Goldman Sachs Real Estate Funding Corp., Peter C. Aberg, Howard S. Altarescu, Robert J. Christie, Kevin Gasvoda, Michelle Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks, and Mark Weiss.

Richard W. Clary, Richard J. Stark, Michael T. Reynolds, Lauren A. Moskowitz, Cravath, Swaine & Moore LLP, for Defendants Credit Suisse Securities (USA) LLC, Credit Suisse Holdings (USA), Inc., Credit Suisse (USA), Inc., DLJ Mortgage Capital, Inc., Credit Suisse First Boston Mortgage Securities Corporation, Asset Backed Securities Corporation, Credit Suisse First Boston Mortgage Acceptance Corporation, Andrew A. Kimura, Jeffrey A. Altabef, Evelyn Echevarria, Michael A. Marriott, Zev Kindler, Thomas E. Siegler, Thomas Zingalli, Carlos Onis, Steven L. Kantor,

Philippe Z. Selendy, Manisha M. Sheth, Jordan A. Goldstein, Toby E. Futter, Quinn Emanuel Urquhart & Sullivan, LLP, Christopher P. Johnson, Michael A. Hanin, Kanchana Wangkeo Leung, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for the plaintiff.

James P. Rouhandeh, Brian S. Weinstein, Daniel J. Schwartz, Nicholas N. George, Jane M. Morril, Davis Polk & Wardwell LLP, New York, NY, for defendants Morgan Stanley, Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co. LLC), Morgan Stanley Mortgage Capital Holdings LLC (successor-in-interest to Morgan Stanley Mortgage Capital Inc.), Morgan Stanley ABS Capital I, Inc., Morgan Stanley Capital I Inc., Saxon Capital, Inc., Saxon Funding Management LLC, Saxon Asset Securities Company, Gail P. McDonnell, Howard Hubler, David R. Warren, and Steven S. Stern.

Bruce Clark, Sullivan & Cromwell LLP, New York, NY, Amanda F. Davidoff, Sullivan & Cromwell LLP, Washington, DC, for Defendants First Horizon National Corporation, First Tennessee Bank National Association, FTN Financial Securities Corporation, First Horizon Asset Securities, Inc., Gerald L. Baker, Peter F. Makowiecki, Charles G. Burkett, and Thomas J. Wageman.

Thomas C. Rice, David J. Woll, Andrew T. Frankel, Alan C. Turner, Simpson Thacher & Bartlett LLP, New York, NY, for Defendants Deutsche Bank AG, Taunus Corporation, Deutsche Bank Securities Inc., DB Structured Products, Inc., Ace

Joseph M. Donovan, Juliana Johnson, and Greg Richter.

Bruce Clark, Sullivan & Cromwell LLP, New York, NY, Amanda F. Davidoff, Sullivan & Cromwell LLP, Washington, DC, for Defendants Nomura Securities International, Inc., Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante LaRocca.

Jay B. Kasner, Scott Musoff, George Zimmerman, Robert A. Fumerton, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants SG Americas, Inc., SG Americas Securities Holdings, LLC, SG Americas Securities, LLC, SG Mortgage Finance Corp., and SG Mortgage Securities, LLC, Arnaud Denis, Abner Figueroa, Tony Tusi, and Orlando Figueroa.

John M. Conlon, Mark S. Hanchet, Michael O. Ware, Mayer Brown LLP, New York, NY, for Defendants HSBC North America Holdings Inc., HSBC USA Inc., HSBC Markets (USA) Inc., HSBC Bank USA, NA., HSI Asset Securitization Corporation.

Pamela Rogers Chepiga, Josephine A. Cheatham, Allen & Overy LLP, New York, NY, for Defendant Samuel L. Molinaro, Jr.

Thomas C. Rice, David J. Woll, Alan Turner, Simpson Thacher & Bartlett LLP, New York, NY, for Defendant RBS Securities Inc.

Daniel C. Zinman, Matthew M. Riccardi, Richards Kibbe & Orbe LLP, New York, NY, for Defendants George C. Carp, Robert Caruso, George E. Ellison, Adam D. Glassner, Daniel B. Goodwin, Juliana Johnson, Michael J. Kula, William L. Maxwell, Mark I. Ryan, and Antoine Schetritt; Matthew Whalen; Brian Sullivan; Michael McGovern; Donald Puglisi; Paul Park, and Donald Han.

Dani R. James, Jade A. Burns, Kramer Levin Naftalis & Frankel LLP, New York, NY, for Defendant Jeffrey L. Verschleiser.

## OPINION & ORDER

DENISE COTE, District Judge:

Before the Court are a September 27, 2013 motion for partial summary judgment by the Federal Housing Finance Agency ("FHFA") and a related November 1, 2013 motion to certify a question of law to the Supreme Court of Virginia filed by the defendants. Both motions concern the issue of whether a loss causation defense exists under the Virginia and Washington, D.C. Blue Sky laws. For the reasons stated below, FHFA's motion for partial summary judgment is granted, and the defendants' motion to certify is denied.

## BACKGROUND

These actions involve alleged misrepresentations in the offering materials for residential mortgage backed securities purchased by Fannie Mae and Freddie Mac (collectively, the "GSEs") between 2005 and 2007.[1] The securities at issue consist-

---

**1.** The Federal Housing Finance Agency ("FHFA"), acting as conservator of the GSEs, filed seventeen actions in this district against various financial institutions in connection with these transactions. One action was transferred to the Central District of California as related to defendant Countrywide's bankruptcy proceedings in that district.

*FHFA v. Countrywide Financial Corp., et al.,* No. 11 Civ. 6916(DLC) (S.D.N.Y. Feb. 8, 2012) (transfer order). Four others have been dismissed as settled between the parties: *FHFA v. General Electric Co., et al.,* No. 11 Civ. 7048(DLC); *FHFA v. Citigroup Inc., et al.,* No. 11 Civ. 6196(DLC); *FHFA v. UBS Americas Inc., et al.,* No. 11 Civ. 5201(DLC);

ed of certificates issued by a trust that were backed by pools of underlying mortgages and entitled the owners to income in the form of payments on those mortgages. The value of the certificates thus depended on the ability of mortgagors to repay the loan principal and interest and the adequacy of the collateral in the event of default. *FHFA v. UBS Americas, Inc.,* 858 F.Supp.2d 306, 312 (S.D.N.Y.2012).

FHFA has asserted claims under the Securities Act of 1933 (the "'33 Act"), 15 U.S.C. §§ 77a *et seq.,* as well as under the Blue Sky laws of Virginia, Virginia Securities Act, VA Code Ann. § 13.1–522, and the District of Columbia, District of Columbia Securities Act, D.C.Code § 31–5606.05. Freddie Mac is based in Virginia and Fannie Mae is based in the District of Columbia. Each of these actions contains claims asserted under both the Virginia and D.C. Blue Sky Laws, with the exception of *FHFA v. First Horizon National Corp.,* No. 11 Civ. 6193(DLC), which involves only the D.C. Blue Sky law, and *FHFA v. Ally Financial Inc.,* No. 11 Civ. 7010(DLC), which involves only the Virginia Blue Sky law.

In their answers, the defendants asserted loss causation as an affirmative defense, indicating that they intended to argue that the losses suffered by the GSEs were caused, at least in part, not by the particular misrepresentations in the offering documents at issue, but by the financial crisis generally. Such a defense was added to Section 12 of the '33 Act by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. No. 104–67, 109 Stat. 737, which provided that

if the person who offered or sold such security proves that any portion or all of

the amount recoverable ... represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, with respect to which the liability of that person is asserted ... then such portion or amount, as the case may be, shall not be recoverable.

15 U.S.C. § 77*l* (b).

FHFA filed its motion for partial summary judgment on September 27, 2013, arguing that the Virginia and D.C. Blue Sky laws do not provide a loss causation defense analogous to the one provided in Section 77*l* (b) of the '33 Act, and seeking to bar the defendants' loss causation defenses as a matter of law. The defendants opposed FHFA's motion on November 1, and along with their opposition filed a motion to certify to the Virginia Supreme Court the issue of whether the Virginia Blue Sky law contains a loss causation defense. FHFA's motion for partial summary judgment became fully submitted on November 22, while defendants' motion to certify was fully submitted on December 6.

## DISCUSSION

### I. Motion for Summary Judgment

■ Unlike the '33 Act, neither the Virginia nor the D.C. Blue Sky laws explicitly contain a loss causation defense. The Virginia Blue Sky law provides, in pertinent part, that

*[a]ny person who ... sells a security by means of an untrue statement of a material fact* or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading (the purchaser not

and *FHFA v. JPMorgan Chase & Co., et al.,* No. 11 Civ. 6188(DLC). Discovery in one additional related action pending in the District of Connecticut, *FHFA v. The Royal Bank*

*of Scotland Group PLC, et al.,* 3:11–cv–1383 (AWT), is being coordinated with the cases pending in this Court.

knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, *shall be liable to the person purchasing such security from him who may* sue either at law or in equity to *recover the consideration paid for such security,* together with interest thereon at the annual rate of six percent, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security.

Va.Code Ann. § 13.1–522(A) (emphasis supplied). The only two defenses explicitly provided absolve a defendant of liability if the purchaser knew of the "untruth or omission" at issue or if the defendant proves that "he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission." *Id.* The statute also provides the remedy of rescission, allowing a plaintiff to recover essentially the full purchase price of the security at issue after tendering it to the defendant. *Id.*

Nowhere does the text of the statute allow a defendant to avoid liability for portions of the plaintiff's loss that it shows were not caused by the misrepresentations at issue. The defendants do not provide any interpretation of the text that they say supports such a reading, nor do they cite any Virginia case law that has ever interpreted this text to include a loss causation defense. Moreover, as FHFA observes, a loss causation defense would be somewhat at odds with the statute's rescission remedy, which allows a plaintiff to essentially return the security for the full purchase price, without any reduction based on intervening and unrelated changes in the security's value.

Defendants rely primarily on federal law in arguing that a loss causation defense should be read into the Virginia Blue Sky law. Defendants begin by pointing out that the Virginia Blue Sky law was based on the '33 Act, and that Virginia courts therefore look to federal law in interpreting their own Blue Sky law. Defendants rely in particular on *Andrews v. Browne,* 276 Va. 141, 662 S.E.2d 58 (2008), which observed that "the Virginia Securities Act should receive similar construction as the 1933 and 1934 Acts." *Id.* at 62 (citation omitted). Of course, the PSLRA added a loss causation defense to the Securities Act in 1995, while the Virginia Blue Sky law has never been similarly amended. Defendants argue that the Virginia Securities Act nevertheless be interpreted to include a loss causation defense because the '33 Act always included a loss causation defense implicitly, and the PSLRA merely *clarified* that such a defense had always been part of the law.

Defendants' argument suffers from several flaws. First, and perhaps most critically, the '33 Act did not actually include a loss causation defense before the enactment of the PSLRA. As the Supreme Court observed in *Randall v. Loftsgaarden,* 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986), "by enabling the victims of prospectus fraud to demand rescission upon tender of the security, Congress shifted the risk of an intervening decline in the value of the security to defendants, whether or not that decline was actually caused by the fraud." *Id.* at 659, 106 S.Ct. 3143; *see also Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124, 1126 (2d Cir.1989); 1 Thomas L. Hazen, The Law of Securities Regulation § 7.5.3, at 332 (2d ed. 1990) (noting that under Section 12, plaintiffs are "entitled to rescissionary damages regardless of the reason for the decline in value").

■ Defendants do not cite any case holding that a loss causation defense existed under Section 12 of the Securities Act before the enactment of the PSLRA. Instead, defendants rely principally on the Senate Report that accompanied the PSLRA, which observed that Section 12 was being amended "to clarify that defendants may raise the absence of 'loss causation' as an affirmative defense." S.Rep. No. 104–98, at 23, 1995 U.S.C.C.A.N. 679, 702 (1995). This is a meagre thread on which to hang an argument. There is no justification for treating the Senate's use of the term "clarify" in 1995 as a controlling interpretation of the meaning of the Securities Act of 1933. As the Supreme Court has insisted, "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC,* —— U.S. ——, 131 S.Ct. 1068, 1081–82, 179 L.Ed.2d 1 (2011). Since, as defendants concede, no federal court interpreted the '33 Act as incorporating a loss causation defense before one was added by the PSLRA, there is no reason to think the Virginia Supreme Court would read a loss causation defense into the Virginia Securities Act if confronted with the question now.

Nor have defendants shown that Virginia courts follow federal law so slavishly as to incorporate into Virginia statutes amendments that have been made to their federal counterparts. While defendants press the Virginia Supreme Court's observation that "the Virginia Securities Act should receive similar construction as the 1933 and 1934 Acts," *Andrews,* 662 S.E.2d at 62, they ignore the following sentence, which explains that "[w]hen engaged in interpretation of a term used in the Virginia Securities Act, it is appropriate to look to the federal courts' interpretation of the same term in the context of the 1933 and 1934 Acts." *Id.* Defendants have not point-ed to any term in the Virginia Securities Act whose ambiguity requires a turn to federal law.

Defendants also rely on a handful of cases from Virginia courts that they argue support reading a loss causation defense into the Virginia Securities Act. For instance, defendants quote the Virginia Supreme Court as holding that a claim for damages under the VSA requires proof that the plaintiff "reasonably relied" on a defendant's misstatement, and that "this reasonable reliance resulted in provable damages." *Bd. of Supervisors v. Davenport & Co.,* 285 Va. 580, 742 S.E.2d 59, 63 (2013). As FHFA observes, however, that case involved a claim for fraud in connection with financial advice under Section 13.1–522(B) of the VSA, which allows a plaintiff to recover "any loss due to such advice." Va.Code Ann. § 13.1–522(B). Section 13.1–522(A), at issue here, contains no similar language suggesting that damages be limited to those caused by the misrepresentation at issue.

■ Defendants also claim that the Virginia Supreme Court is "reluctant to expand liability in civil cases" and therefore "would very likely agree with Congress that recognizing a loss causation defense is necessary" to avoid "providing an unfair windfall to shareholders." The Virginia Supreme Court also, however, requires courts to "apply the plain language of a statute unless the terms are ambiguous." *Boynton v. Kilgore,* 271 Va. 220, 623 S.E.2d 922, 926 (2006). Again, defendants have not pointed to any ambiguity in the Virginia Blue Sky law that could be interpreted to provide a loss causation defense.

■ Nothing in the D.C. Blue Sky law supports reaching a different result in interpreting that statute. The relevant provisions of the D.C. Blue Sky law are essentially the same as those of their Virginia

counterpart: the D.C. law contains the same affirmative defenses, D.C.Code § 31–5606.05(a)(1)(B), and similarly provides, in the way of damages, that a plaintiff may "recover the consideration paid for the security ... less the amount of any income received on the security, upon the tender of the security." *Id.* at § 31–5606.05(b)(1)(A). Like the Virginia Blue Sky law, the D.C. Blue Sky law is based on the Uniform Securities Act, *Forrestal Vill., Inc. v. Graham*, 551 F.2d 411, 414 & n. 4 (D.C.Cir.1977), which itself is modeled on the pre-PSLRA language of Section 12 of the '33 Act. *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 602–03, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (Ginsburg, J., dissenting).

Defendants rely on *Price v. Griffin*, 359 A.2d 582 (D.C.1976), which they argue establishes that a plaintiff must prove reliance to establish liability under the D.C. Blue Sky law. Even if this were so,[2] the court's "general proposition" that "recovery should not be allowed ... if the sale was made under circumstances showing that such misrepresentation was not one which caused the investor to enter into the transaction," *id.* at 588, simply does not speak to the issue of loss causation. Nor does it, as the defendants insist, enshrine a principal of preventing "windfall awards" that overrides the text of the statute at issue. As with the Virginia Securities Act, there is no basis to read a loss causation defense into the D.C. Blue Sky law.

## II. Motion for Certification

Defendants argue, in a related motion, that the question of whether a loss causation defense exists under Virginia law should be certified to the Virginia Supreme Court. Rule 5:40 of the Supreme Court of Virginia allows federal district courts to certify questions of law "if a question of Virginia law is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of this Court or the Court of Appeals of Virginia." Va. Sup.Ct. Rule 5:40(a). The Virginia rules also require the certifying court to provide, *inter alia*, "a brief statement explaining how the certified question of law is determinative of the proceeding in the certifying court." *Id.* at 5:40(c)(6).

The Second Circuit, however, has explained that certification "must not be a device for shifting the burdens of this Court to those whose burdens are at least as great" because "it is our job to predict how the forum state's highest court would decide the issues before us." *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir.2005) (citation omitted). Thus, "[c]ertification is to be used in those cases where there is a split of authority on the issue, where a statute's plain language does not indicate the answer, or when presented with a complex question of [state] common law for which no [state] authority can be found." *Id.* (citation omitted). The Second Circuit has elsewhere described three factors to be considered: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *Casey v. Merck & Co., Inc.*, 653 F.3d 95, 101 (2d Cir.2011) (citation omitted).

The issue presented here is not one that is ripe for certification. While there may not be controlling Virginia case law, there is also not a split of authority. Indeed, the resolution of the issue is made sufficiently clear by the text of the statute

---

**2.** *Price* is not entitled to much weight as controlling authority. *FHFA v. Merrill Lynch & Co.*, 903 F.Supp.2d 274, 280 (S.D.N.Y.2012).

itself. Certification would therefore be inefficient and unnecessary.[3]

## CONCLUSION

FHFA's September 27, 2013 motion for partial summary judgment is granted. Defendants' November 1, 2013 motion to certify a question of law is denied.

---

3. The parties expend much energy debating whether the resolution of this legal issue would be sufficiently "determinative" in this litigation within the meaning of the Virginia Supreme Court's rulès. It is not necessary to reach this issue to conclude that certification is not appropriate, since the "statute's plain language ... indicate[s] the answer." *DiBella*, 403 F.3d at 111.