### In re FTC CORPORATE PATTERNS REPORT LITIGATION.

### In re FTC LINE OF BUSINESS REPORT LITIGATION.

#### Misc. Nos. 76–0126, 76–0127.

United States District Court, District of Columbia.

Jan. 21, 1977.

---

Co., Inc.; American Home Products Corp.; The Boeing Co.; Burlington Industries, Inc.; The Carrier Corp.; Celanese Corp.; Digital Equipment Corp.; Eagle-Picher Industries, Inc.; Eaton Corp.; Jim Walter Corp.; The LTV Corp.; Mine Safety Appliances Co.; Monsanto Co.; Outboard Marine Corp.; Pittsburgh Forgings Co.; Raytheon Co.; Reichhold Chemicals, Inc.; Reynolds Metals Co.; A.O. Smith Corp.; Texas Instruments, Inc.; W.R. Grace & Co.; and Xerox Corp.

Ira M. Millstein, Mark A. Jacoby, and Salem M. Katsh of Weil, Gotshal & Manges, New York City, for Chamber of Commerce of United States; Allegheny Ludlum Industries Inc.; Aluminum Co. of America; Anchor Hocking Corp.; Armco Steel Corp.; Brown Group, Inc.; The Coca-Cola Co.; Dairylea Cooperative, Inc.; Diamond International Corp.; Dr. Pepper Co.; E.I. Du Pont de Nemours and Co.; General Electric Co.; General Motors Corp.; The B.F. Goodrich Co.; Gulf & Western Industries, Inc.; Handy & Harman; Hoerner Waldorf Corp.; Howmet Corp.; Hudson Pulp & Paper Corp.; Ingersoll-Rand Co.; International Harvester Co.; International Paper Co.; Johns-Manville Corp.; Kane Miller Corp.; Kohler Co.; Kraftco Corp.; Leviton Manufacturing Co., Inc.; Loews Corp.; Mattel, Inc.; Occidental Petroleum Corp.; Owens-Illinois, Inc.; Revlon, Inc.; Rubbermaid Inc.; The Rucker Co.; Savannah Foods & Industries, Inc.; Sperry Rand Corp.; Sterling Drug, Inc.; Thiokol Corp.; The Times Mirror Co.; Union Carbide Corp.; United States Steel Corp.; Universal Foods Corp.; USM Corp.; and Warner Communications, Inc.

John F. McClatchey and Leslie W. Jacobs of Thompson, Hine & Flory, Cleveland, Ohio, for The Goodyear Tire & Rubber Co.; Hobart Corp.; and Van Dorn Co.

J. Randolph Wilson, John S. Koch, Steven S. Rosenthal, and Philip C. Stahl of Covington & Burling, Washington, D.C., for Chamber of Commerce of United States; Air Products and Chemicals, Inc.; American Can Co.; Archer-Daniels-Midland Co.; Armstrong Cork Co.; Asarco Inc.; Brockway Glass Co., Inc.; Campbell Soup Co.;

Edward T. Tait, Lee A. Rau, John M. Wood, Stuart M. Gerson, and Thomas H. Reilly of Reed, Smith, Shaw & McClay, Washington, D.C., for American Air Filter

Carnation Co.; Eli Lilly and Co.; Emery Industries, Inc.; Faberge, Inc.; Fuqua Industries, Inc.; General Telephone & Electronics Corp.; Gerber Products Co.; Harris Corp.; Inland Container Corp.; International Business Machines Corp.; International Multifoods Corp.; Kellwood Co.; The Marley Co.; Miles Laboratories, Inc.; Nabisco, Inc.; PPG Industries, Inc.; The Procter & Gamble Co.; R.J. Reynolds Industries, Inc.; Scott Paper Co.; Standard Brands Inc.; The Trane Co.; United States Filter Corp.; Westinghouse Electric Corp.; Wheelabrator-Frye Inc.; Whittaker Corp.; and Wyman-Gordon Co.

Richard W. Pogue of Jones, Day, Reavis & Pogue, Cleveland, Ohio, and Mark Elliot Mazo and John C. Reitz of Jones, Day, Reavis & Pogue, Washington, D.C., for American Greetings Corp.; Cooper Industries, Inc.; Diamond Shamrock Corp.; The B.F. Goodrich Co.; Hershey Foods Corp.; Lear Siegler, Inc.; Minnesota Mining & Manufacturing Co.; The Murray Ohio Manufacturing Co.; The Ohio Brass Co.; Reliance Electric Co.; The Scott & Fetzer Co.; The Sherwin-Williams Co.; The Tappan Co.; The Timken Co.; TRW Inc.; and The Weatherhead Co.

Robert E. Jordan, III, Robert M. Goolrick, and Michael K. Wyatt of Steptoe & Johnson, Washington, D.C., and Edward E. Vaill and Michael J. Myers of Atlantic Richfield Co., Los Angeles, Cal., for Atlantic Richfield Co.

Michael K. Wyatt of Steptoe & Johnson, Washington, D.C., for Fairmont Foods Co.

Philip A. Lacovara, Gerald Goldman, and David M. Becker of Hughes, Hubbard & Reed, Washington, D.C., for Allen-Bradley Co. and Merck & Co., Inc.

Frank P. Cihlar and James R. Henderson, IV, of Mayer, Brown & Platt, Washington, D.C., for CPC International, Inc.; Cargill, Inc.; Inland Steel Co.; Northwest Industries, Inc.; Oscar Mayer & Co., Inc.; Ross Industries, Inc.; and Sundstrand Corp.

John F. Graybeal and Robert C. Houser, Jr., of Foley, Lardner, Hollabaugh & Jacobs, Washington, D.C., for Square D Co.

William Simon, Harold F. Baker, David C. Murchison, J. Wallace Adair, John DeQ. Briggs, and Stuart H. Harris of Howrey & Simon, Washington, D.C., for American Cyanamid Co.; Anheuser-Busch, Inc.; E.T. Barwick Industries, Inc.; The Black and Decker Manufacturing Co.; Caterpillar Tractor Co.; The Ceco Corp.; Cities Service Co.; City Investing Co.; Congoleum Corp.; Consolidated Foods Corp.; Del Monte Corp.; The Dow Chemical Co.; Exxon Corp.; General Mills, Inc.; H.J. Heinz Co.; Heublein, Inc.; Household Finance Corp.; ICI Americas, Inc.; Koppers Co., Inc.; Litton Industries, Inc.; Martin Marietta Corp.; McGraw-Edison Co.; Mead Corp.; National Can Corp.; National Gypsum Co.; Oxford Industries, Inc.; Paccar Inc.; Pepsico, Inc.; Phillips Petroleum Co.; Rockwell International Corp.; Shell Oil Co.; Simplicity Pattern Co., Inc.; Simpson Timber Co.; Standard Oil Co. of California; Standard Oil Co. (Indiana); Standard Pressed Steel Co.; Sunbeam Corp.; Timex Corp.; United Brands Co.; and West Point-Pepperell, Inc.

Jack L. Lipson, Andrew S. Krulwich, and Hadrian R. Katz of Arnold & Porter, Washington, D.C., for Hoffmann-La Roche Inc. and Lone Star Industries, Inc.

Philip J. Davis of Kirkland, Ellis & Rowe, Washington, D.C., and Donald G. Kempf, Jr. and Joseph F. Coyne of Kirkland & Ellis, Chicago, Ill., for Chemetron Corp.; Dean Foods Co.; The Firestone Tire & Rubber Co.; FMC Corp.; Harnischfeger Corp.; Kirsch Co.; Lehigh Portland Cement Co.; Motorola, Inc.; Polaroid Corp.; and Rexnord, Inc.

Peter Fleming, Jr., Eliot Lauer, and Samuel F. Abernethy of Curtis, Mallet-Prevost, Colt & Mosle, New York City, for Dover Corp.

James F. Rill and Kathleen E. McDermott of Collier, Shannon, Rill, Edwards & Scott, Washington, D.C., for Carpenter Technology Corp.; Kohler Co.; Safeway Stores, Inc.; and A.E. Staley Manufacturing Co.

Theodore A. Groenke and Harold J. Bressler of McDermott, Will & Emery, Chicago,

Ill., for Kohler Co. and A.E. Staley Manufacturing Co.

James F. Bromley of Macleay, Lynch, Bernhard & Gregg, Washington, D.C., for United States Gypsum Co.

Harold S. Barron and Noel C. Crowley of The Bendix Corp., Southfield, Mich., for The Bendix Corp.

Arloe Mayne, Gen. Counsel, Ashland Oil, Inc., Ashland, Ky., and Ronald P. Wertheim of Ginsburg, Feldman & Bress, Washington, D.C., for Ashland Oil, Inc.

Milton J. Schubin and Richard C. Seltzer of Kaye, Scholer, Fierman, Hays & Handler, New York City, for GAF Corp.

Daniel K. Mayers and Neil J. King of Wilmer, Cutler & Pickering, Washington, D.C., and James R. DeVita of Sullivan & Cromwell, New York City, for American Standard, Inc.; The Babcock & Wilcox Co.; Ford Motor Co.; The General Tire & Rubber Co.; and Kaiser Aluminum & Chemical Corp.

James M. Porter of Squire, Sanders & Dempsey, Cleveland, Ohio, and William C. Collishaw of Cox, Langford & Brown, Washington, D.C., for White Consolidated Industries, Inc.

David S. Pennock of Alexander & Green, New York City, for Cerro-Marmon Corp.

Samuel K. Abrams and Wilbur L. Fugate of Morison, Murphy, Abrams & Haddock, Washington, D.C., for Cone Mills Corp. and The Sperry and Hutchinson Co.

Raymond E. Vickery, Jr., of Hogan & Hartson, Washington, D.C., for Hughes Tool Co. and Republic Steel Corp.

Ramsay D. Potts and Steven L. Meltzer of Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for Emerson Electric Co.

Leonard I. Horowitz of Times Mirror Co., New York City, for Times Mirror Co.

Barry Hirsch of Loews Corp., New York City, for Loews Corp., Milton Wolson and Edwin Silverstone of SCM Corp., New York City, and S. White Rhyne, Jr., of Mullin, Connor & Rhyne, Washington, D.C., for SCM Corp.

Sydney B. Wertheimer of Weisman, Celler, Spett, Modlin, Wertheimer & Schlessinger, New York City, for Fedders Corp.

Paul J. Newlon and Victoria G. Traube of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Milliken & Co.

Fred L. Woodworth of Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for Overhead Door Corp. and Champion Home Builders Co.

Philip W. Schaefer of Texaco Inc., New York City, for Texaco Inc.

Jesse P. Luton, Jr., John E. Bailey, and Kevin F. Cunningham of The Gulf Companies, Houston, Tex., for Gulf Oil Corp.

Joseph W. Burns of Burns, Van Kirk, Greene & Kafer, New York City, for Ingersoll-Rand Co.

Albert R. Connelly and Andrew D. Postal of Cravath, Swaine & Moore, New York City, for Bethlehem Steel Corp.; Cincinnati Milacron, Inc.; Kellogg Co.; Olin Corp.; Republic Steel Corp.; Rhinechem Corp.; and Time Inc.

Edwin S. Rockefeller and Alan M. Frey of Bierbower & Rockefeller, Washington, D.C., for Norton Simon Inc.

Norman Solovay of Holtzmann, Wise & Shepard, New York City, and Leonard M. Kessler of Kelley, Drye & Warren, New York City, for Chrysler Corp.

Charles H. McAuliffe of Thomas J. Lipton, Inc., Englewood Cliffs, N.J., for Thomas J. Lipton, Inc.

David J. Lewis and Elroy H. Wolff of Sidley & Austin, Washington, D.C., for Thomas J. Lipton, Inc. and Kimberly-Clark Corp.

Robert D. Tyler, Jr., Chicago, Ill., of Beatrice Foods Co., Chicago, Ill., and John R. Reilly of Winston & Strawn, Washington, D.C., for Beatrice Foods Co., Rorer-Amchem, Inc., Fort Washington, Pa.

Kenneth Schnapper of Crane Co., New York City, for Crane Co., Eve E. Bachrach of Stein, Mitchell & Mezines, Washington, D.C., for C.I.T. Financial Corp. and Food Fair Stores, Inc.

Thomas C. Morrison of Patterson, Belknap, Webb & Tyler, New York City, for Johnson & Johnson.

Dennis M. Sheedy of Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for Cyclops Corp.

Donald J. Mulvihill and Gerald J. Brown of Cahill, Gordon & Reindel, Washington, D.C., for The Great Atlantic & Pacific Tea Co., Inc.

Andrew J. Kilcarr of Donovan, Leisure, Newton & Irvine, Washington, D.C., and Thomas R. Trowbridge, III, of Donovan, Leisure, Newton & Irvine, New York City, and Charles F. Rice of Mobil Oil Corp., New York City, for Mobil Oil Corp.

Donald G. McCabe and Anthony B. Barton of Hall, McNicol, Hamilton & Clark, New York City, for American Maize-Products Co.

Charles Kadish, of Breed, Abbott & Morgan, New York City, for Honeywell, Inc.

Gilbert H. Weil and Robert L. Sherman of Weil, Guttman & Davis, New York City, for Bristol-Myers Co.

Caswell O. Hobbs, III, and David W. Huston of Morgan, Lewis & Bockius, Washington, D.C., for American Stores Co.

David C. Trowbridge of Hallmark Cards, Inc., Kansas City, Mo., for Hallmark Cards, Inc.

Ronald G. Precup of Nussbaum & Owen, Washington, D.C., for American Beef Packers, Inc.

Stephen Kurzman of Nixon, Hargrave, Devans & Doyle, Washington, D.C., for Bausch & Lomb, Inc.; Dunlop Tire & Rubber Corp., Buffalo, N.Y., NL Industries, Inc., New York City, R.T. French Co., Rochester, N.Y.

Larry L. Williams and Robert J. Pope of Clifford, Glass, McIlwain & Finney, Washington, D.C., for The Continental Group, Inc. (formerly Continental Can Co., Inc.).

Eve E. Bachrach, Washington D.C., for Food Fair Stores, Inc.

Stein, Mitchell, Mezines, Washington, D.C., for C.I.T. Financial Corp.

Larry L. Williams and Robert J. Pope, of Clifford, Glass, McIlwain & Finney, Washington D.C., for Continental Group, Inc.

Jack E. Thornton, Jr., Atty., Dept. of Justice, David J. Anderson, Atty., Dept. of Justice, Rex E. Lee, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for Comptroller General.

Gerald P. Norton, Deputy Gen. Counsel, F.T.C., Robert J. Lewis, Gen. Counsel, F.T.C., Jerold D. Cummins, Acting Asst. Gen. Counsel, F.T.C., Warren S. Grimes, Atty., F.T.C., L. Wayne Krug, F.T.C., Washington, D.C., for the F.T.C.

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

This matter arises before the court in a number of consolidated enforcement and preenforcement cases. These actions concern the Federal Trade Commission's information-gathering activities in connection with the Line of Business Program (LB) and the Corporate Patterns Report Survey (CPR). The consolidated cases include the FTC's enforcement action against various corporations that have failed to comply with Commission orders requiring them to file the 1974 Form LB,[1] the FTC's enforcement action against various corporations that have failed to comply with Commission orders requiring them to file CPR forms,[2] preenforcement actions concerning the LB Program filed against the FTC, certain FTC Commissioners, and the Comptroller General by a number of companies in the District of Delaware later transferred to this court, preenforcement actions concerning the CPR Survey filed against the FTC, certain FTC Commissioners, and the Comptroller General by a number of companies in the District of Delaware later transferred to this court, and similar actions concerning the LB Program and the CPR Survey originally filed in the Southern District of New York and later transferred to this court.

1. *FTC v. A. E. Staley Mfg. Co.*, Misc. No. 76–0080.

2. *FTC v. Air Products & Chemicals, Inc.*, Misc. No. 76–64.

Pursuant to this court's order of July 30, 1976, the parties have completed the filing of and opposition to all motions that should be decided by the court at this time. In addition, the parties have submitted outlines detailing the discovery or evidentiary hearings they believe necessary before the court can rule on the merits of a claim or defense. In light of the volume of the pleadings in this case,[3] the court could not hope to grapple with all the pending motions at one time. Accordingly, the court held an oral hearing on four pending motions on January 7, 1977: the corporate parties' motion to dismiss the LB and CPR enforcement actions, the FTC's motion to dismiss the LB and CPR preenforcement actions, the Comptroller General's motion to dismiss the LB and CPR preenforcement actions, and the FTC's motion for a more definite statement of counterclaims. Each motion is discussed in turn, and an appropriate order follows this memorandum opinion.

## I. *Corporate Parties' Motion to Dismiss*

The corporate parties move to dismiss the enforcement actions concerning the LB and CPR orders for lack of jurisdiction. The corporate parties proffer three basic arguments in support of their motion: (1) the FTC can obtain mandatory relief only through a civil action pursuant to the *Federal Rules of Civil Procedure*, and the court thus has no matter pending; (2) the FTC must bring any enforcement claims against preenforcement plaintiffs as compulsory counterclaims; and (3) the court does not have personal jurisdiction over several respondents in the enforcement proceeding. For the reasons set forth below, the court

must deny or defer the corporate parties' motion to dismiss.

### A. *Civil Action v. Summary Procedure*

The corporate parties contend that the FTC can obtain relief in the enforcement proceedings only through institution of a normal civil action pursuant to the *Federal Rules of Civil Procedure*. The FTC has not followed the usual complaint-summons-service procedure for institution of a civil suit; instead the Commission has employed a petition-show cause order approach, purportedly under the authority of section 9 of the Federal Trade Commission Act.[4] Its goal is a mandamus remedy under that section. The corporate parties' argument on the ability of the FTC to obtain a mandamus remedy in a special reports order case under section 9 is a simple one. They contend that Rule 81(b) of the *Federal Rules of Civil Procedure*,[5] abolishing the writ of mandamus, must control over any inconsistent practice under section 9 predating the adoption of the *Rules*. Indeed, section 1 of the Rules Enabling Act, 28 U.S.C. § 2072, provides that all "laws in conflict with such rules shall be of no further force or effect. . . . ."

■ This argument correctly states the law, but does not go far enough. Rule 81(b) merely abolished the *writ* of mandamus and not the remedy; mandamus relief now is available "by appropriate action or by appropriate motion." The effect of Rule 81(b) therefore is not earthshaking since it merely substitutes in place of the writ practice an action or motion under the *Rules*. 7 J. Moore, *Federal Practice* Par. 81.07, at 81–96 (2d ed. 1975). The corporate parties attempt to complete the circle of their ar-

---

**3.** The court wishes to note that the parties have simplified the court's task enormously by submitting consolidated pleadings wherever possible.

**4.** Section 9, 15 U.S.C. § 49, provides in relevant part:

Upon the application of the Attorney General of the United States, at the request of the Commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person, partnership or corporation to comply with the provi-

sions of sections 41 to 46 and 47 to 58 of this title or any order of the Commission made in pursuance thereof.

**5.** Rule 81(b) provides:

The writs of scire facias and mandamus are abolished. Relief heretofore available by mandamus or scire facias may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules.

gument by noting that a motion or action for mandamus must occur, in light of Rule 81(b), within the context of the *Rules*. They argue that the FTC has neither commenced an action nor made a motion under the *Rules*. To commence an action requires a complaint and summons, and to make a motion requires a pending case, in the corporate parties' view. This argument holds some logic and appeal, but the issue does not reach this court as a question of the first impression.

The corporate parties concede that the FTC may obtain summary enforcement of its *subpoena* orders. They contend, however, that Rule 81 contemplates separate treatment for subpoena order enforcement. Indeed, Rule 81(a)(3) leaves some discretion in the court in subpoena cases.[6] The corporate parties admit that a court has the "discretion to be flexible" in the application of the *Rules* to subpoena enforcement cases. They note that the *Rules* contain no similar allowance rendering the application of the *Rules* discretionary when mandamus relief is sought, however; the express authorization of Rule 81(a)(3) renders subpoena cases inapposite to the mandamus cases facing the court here. Again, the corporate parties have presented a logical argument,[7] but there exist a number of cases purporting to apply a summary procedure in mandamus cases as well as subpoena cases.

Courts began to grapple with the question of summary mandamus procedures in enforcement of FTC orders in the case of *United States v. Associated Merchandising Corp.*, 256 F.Supp. 318 (S.D.N.Y.1966). The court in *Associated Merchandising* considered the FTC's attempt to enforce an order "directing respondents to produce certain documents by way of pretrial discovery" in a pending FTC proceeding. In response to the companies' contention that the FTC could enforce the orders only by commencing a plenary civil action, the court stated:

> As a general rule, district courts do not issue directions in the nature of mandamus except in aid of jurisdiction already acquired. . . . However, where the Court was able to discover a congressional authorization for use of a writ of mandamus, it approved the issuance upon a petition of a peremptory writ. [citation omitted] By Section 49 [section 9], Congress has expressly conferred jurisdiction to issue a writ of mandamus. Therefore, it seems clear that Congress has expressly authorized the court to proceed summarily to enforce orders of the Federal Trade Commission for the production of documents.

256 F.Supp. at 321. The corporate parties attempt to discount this case (and indeed cite it as the genesis of later courts' confusion) on the ground that, although the court spoke of mandamus, it was really simply a subpoena enforcement action. As such, in the corporate parties' view, it was subject to the undisputed Rule 81(a)(3) exception, although the court mistakenly cited Rule 81(b). The FTC draws a distinction between a subpoena and an order to produce documents,[8] but fails to explain any essential distinction or significance to any such difference.

6. The final sentence of Rule 81(a)(3) provides: These *rules* apply *to* proceedings to compel the giving of testimony or production of documents in accordance with a *subpoena* issued by an officer or agency of the United States under any statute of the United States *except as otherwise provided* by statute or by the rules of the district court or *by order of the court in the proceedings*. (emphasis supplied)

7. The FTC places great reliance on the parallel treatment accorded subpoena enforcement and mandamus enforcement under section 9 of the FTC Act. Indeed, this parallel treatment by Congress of subpoenas and orders has continued in the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub. L.No. 93–637, 88 Stat. 2183. Section 204 of that Act amends section 16 of the FTC Act to authorize the Commission to conduct proceedings to enforce subpoenas and section 6 orders. *See* 15 U.S.C. § 56(a)(2)(D). While this shows evidence of Congressional intent to treat the two remedies similarly, it does not answer the corporate parties' Rule 81(b)-Rule 81(a)(3) dichotomy argument.

8. The FTC likens its procedures to those involved in a Rule 45 subpoena and a Rule 34 order to produce documents.

Later cases have shed some light on the issue allegedly confused in *Associated Merchandising*. In *Federal Trade Commission v. Sherry*,[9] Judge Robinson of this court, citing *Associated Merchandising* with approval, held that administrative subpoenas are enforceable by way of summary proceeding under the discretionary authority of Rule 81(a)(3). The corporate parties distinguish this case as another subpoena enforcement case. In *Federal Trade Commission v. Jorgensen*,[10] Judge Gasch of this court rejected an argument, in the context of an FTC subpoena and order requiring access to particular files, that the FTC could not enforce its subpoena by way of a summary proceeding. The court cited nine cases to support its conclusion that "[a] summary proceeding suffices." Slip opinion, at 2 n. 2. While the corporate parties distinguish this case and all but one of the cases cited therein as subpoena enforcement cases, the court in *Jorgensen* twice referred to the action as involving a subpoena and *order*. Slip opinion, at 1 & n. 1. Finally, in *Emerson Electric Co. v. Federal Trade Commission*,[11] Judge Pratt of this court considered a claim similar to that made by the corporate parties in this case and rejected it as being "devoid of merit."

In one notable case cited by the parties, this issue was present but, so far as the court can determine, was not briefed, argued, or considered. In *United States v. Litton Industries, Inc.*,[12] the Ninth Circuit considered FTC orders to file special reports and subpoenas duces tecum concerning the effects of corporate mergers. The court suggested that an enforcement proceeding pursuant to section 9 of the FTC Act was proper, without comment on the form that proceeding should take.[13]

The corporate parties' job in attempting to blunt the weight of judicial authority on this question is an unenviable one. They have asked the court to ignore a unanimous string of cases allowing a summary procedure on the grounds that these cases concerned inapposite subpoena enforcement, did not adequately consider the issue, or were just plain wrong. This court does not read these cases as unconvincedly as do the corporate parties. There is no debate that this issue was at least brought to the court's attention in *Jorgensen*, and that the court treated it as a disputed issue. Similarly, the court enforced the FTC's orders in *Associated Merchandising* under the mandamus provisions of section 9 irrespective of whether it was in fact a subpoena that the FTC sought to enforce. That court explicitly considered the relationship between a mandamus under section 9 and Rule 81(b). That conclusion was cited with approval by the court in *Sherry*. See 1969 Trade Cas. at 87,455. The same challenge made by the corporate parties here was considered and rejected by the court in *Emerson Electric*. In all, the court finds a respectable amount of authority for the proposition that the FTC can proceed in mandamus enforcement actions by way of summary proceeding.

Moreover, the logic of the corporate parties' Rule 81(b) argument is hardly airtight. The rule merely substituted a motion or action practice for the existing writ practice. The corporate parties candidly admit that before 1946, the date the subpoena exception sentence was added to Rule 81(a)(3), the *Rules* were considered to have only limited application to enforcement proceedings, which were not plenary in nature. 7 J. Moore, *Federal Practice* Par. 81.06[1], at 81–84 (2d ed. 1975). There exists as much a logical basis to assume that Con-

**9.** 1969 Trade Cas. § 72,906 (D.D.C.1969).

**10.** Misc. No. 75–46 (D.D.C. May 16, 1975).

**11.** Misc. No. 76–0002 (D.D.C. July 21, 1976).

**12.** 462 F.2d 14 (9th Cir. 1972).

**13.** The FTC suggests that the court infer approval of the practice from that court's silence on the summary proceeding issue, because the question goes to subject matter jurisdiction, into which a court should inquire sua sponte if necessary. However, it is more probable that any courts permitting the practice without comment simply were unaware of the sophisticated argument presented here by the corporate parties.

gress, in amending the rule concerning subpoena enforcement, desired to leave existing practice in other enforcement actions unchanged as there is to assume that Congress by its silence meant to subject all enforcement proceedings to the full panoply of *Rules* requirements. Authority exists for the proposition that an action seeking relief in the nature of mandamus may be commenced by motion or petition when there is no pending action. 7 J. Moore, *supra* Par. 81.07, at 81–96 (citing *Associated Merchandising* and *Sherry*). The court on the whole finds the corporate parties' argument ingenious, well-briefed, and well-argued, but nevertheless lacking in merit.

As a practical matter, the debate on this question is a tempest brewed in a rather small teapot. Even if the court accepted the corporate parties' contention that the FTC had to commence a normal plenary civil action under the *Rules*, that conclusion simply would force the FTC to file a complaint and begin again. The ensuing delay makes little sense to the court: the FTC has filed a petition instead of a complaint and has proceeded by show cause order rather than summons. The corporate parties point to no prejudice flowing from this procedure and, indeed, appear to recognize that the two have operated in this case as functional if not legal equivalents. In fact, the corporate parties offered to accept the petitions as complaints if the court makes "clear that the filing of a complaint was essential to the Commission's request for relief." Respondents' Reply Memorandum, at 5–6. The court declines, for the reasons stated above, to accept the condition to the corporate parties' concession.[14] But the fact that the corporate parties have offered

to proceed despite this alleged defect in the commencement of the actions further demonstrates that they have been denied no procedural rights because of the FTC's course of action.

### B. *Compulsory Counterclaims*

■ The corporate parties' second argument in support of their motion to dismiss is that the FTC must bring any enforcement actions against preenforcement plaintiffs as compulsory counterclaims. The FTC having failed to assert the enforcement actions as counterclaims to the pending preenforcement actions, the court should dismiss them under the authority of Rule 13(a). Rule 13(a) provides, in part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The corporate parties contend that the compulsory counterclaim provisions of Rule 13(a) clearly apply to the instant actions;[15] since the subject matter of the enforcement action without doubt arises out of the same "transaction or occurrence" that forms the basis for the preenforcement actions,[16] Rule 13(a) required assertion of these claims as counterclaims to the preenforcement actions. In addition to the clear requirements of the rule, the corporate parties argue that sound policy considerations support application of the compulsory counterclaim rule in this instance.[17]

---

14. The corporate parties also ask the court to "direct the Commission to file proper pleadings in such matters in the future." Reply, at 6. This the court would not do in any case, since future cases obviously are not now before the court and the court should not render advisory opinions.

15. Rule 13(a) applies generally to the United States and its agencies. *TPO, Inc. v. Federal Deposit Ins. Corp.*, 487 F.2d 131 (3d Cir. 1973); 3 J. Moore, *Federal Practice* Par. 13.25 (2d ed. 1975).

16. A number of tests have been used to determine the same "transaction or occurrence" test. *See Pipeliners Local 798 v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1410, at 42 (1971).

17. The corporate parties quote a passage from *Columbia Plaza Corp. v. Security Nat'l Bank*, 173 U.S.App.D.C. 403, 525 F.2d 620, 626 (1975), relating to the conservation of judicial resources under Rule 13(a) by eliminating duplicate proceedings. Since the enforcement and

The FTC opposes this argument on the ground that, even if Rule 13(a) applies, the time has not yet come for the FTC to file its counterclaims. The FTC has moved to dismiss the preenforcement actions, and this court has not yet ruled on this motion. Under paragraph 10 of this court's July 30, 1976 order, answers are not due until 30 days after notice of the court's denial of the motions to dismiss. Thus the FTC is not yet required to file its answers, much less its counterclaims. The corporate parties seek to avoid this contention on two grounds. First, they argue that the Commission cannot raise this challenge again because the motion to dismiss already has been adversely determined to the FTC by the Delaware district court and the Third Circuit, and that decision has become the law of the case for this court. This argument plainly is without merit; not only may circumstances have changed since those opinions were written, but also they concerned the 1973 LB orders and not the 1974 orders here at issue. Second, the corporate parties contend that the duty to assert a compulsory counterclaim is only postponed by a motion to dismiss, and continues unless the motion is granted. A claim becomes noncompulsory only if it was the subject of another pending action at the time the action was commenced. Rule 13(a). This argument does no more than suggest that the counterclaims may be due at some time in the future; in the interim, the corporate parties expect the FTC to postpone its separate enforcement actions if it desires to move to dismiss the preenforcements actions. The court does not accept this contention.

The court identifies additional reasons to view the corporate parties' claims with some hesitancy. They can cite no cases in which a court has treated an enforcement action as a compulsory counterclaim, while the FTC cites two in which the argument was rejected. *A. O. Smith Corp. v. Federal Trade Commission*, 417 F.Supp. 1068, 1088–89 (D.Del.1976); *Federal Trade Commission v. Emerson Elec. Co.*, Misc. No. 76–0002 (D.D.C. July 21, 1976). The FTC's enforcement actions involve assertion of rights under a Congressionally mandated enforcement scheme, thus distinguishing the case from the *Columbia Plaza* case relied on by the corporate parties. *See A. O. Smith Corp., supra*. Acceptance of the corporate parties' argument would mean that companies seeking to resist FTC orders might well be able to choose the forum and pace of the litigation simply by bringing preenforcement actions. These preenforcement actions could, as here, be brought in more than one forum. The implications of the corporate parties' contentions might work more to encourage than discourage duplicative litigation, and thus ultimately result in impeding the policy objectives of Rule 13(a).[18] The consequences of a ruling in the corporate parties' favor could be undesirable and unwarranted.

## C. *Personal Jurisdiction*

A total of eight of the corporate parties assert a lack of personal jurisdiction over them. This claim encompasses two primary contentions: (1) that no summons and complaint were issued, an indispensable prerequisite to a court's assertion of jurisdiction over a party in a civil action; and (2) that these corporate parties were served beyond the confines of the District of Columbia despite lack of statutory sanction for such service. The first argument can be handled quite easily, as it amounts to a continuation of the claim that the FTC cannot bring its enforcement actions by petition and show cause order. The court has rejected this

---

preenforcement cases have been consolidated in this court, however, judicial economy problems have been minimized.

18. The corporate parties suggest that duplicative litigation could be avoided by normal procedures: motions for change of venue and coordination under the guidelines of the Judicial Panel on Multi-District Litigation. This argument does not meet, however, the FTC's concern at being forced to raise or lose its enforcement claims at the times and places dictated by companies' preenforcement actions. At best, this relief would come at a later time, after the FTC has been forced to submit to the companies' timing for asserting enforcement claims.

argument. *See* § 1(A), *supra.* The corporate parties certainly have received the notice a summons is designed to provide under the petition-show cause order procedure.

A more difficult issue is posed by the corporate parties' second argument. The FTC effected service in these enforcement actions by two methods: personal service by a United States Marshal outside of the District of Columbia and service on the D.C. Recorder of Deeds to be mailed to the named respondents. Rule 4(f) of the *Federal Rules of Civil Procedure* provides that service of process may occur beyond the territorial limits of a state "when authorized by a statute of the United States or by these rules. . . ." Rule 4(e) authorizes extraterritorial service where "a statute or rule of court of the state in which the district court is held" so provides. The FTC does not argue that a federal statute permits extraterritorial service in the circumstances of this case; the court therefore will focus on state statutes purporting to allow such service here.

The parties agree that the potentially applicable statutes are 13 D.C.Code § 334 and 29 D.C.Code § 933i. The parties further agree that the relevant portions of these two statutes require that a corporation be "doing business" in the District of Columbia before it is amenable to service.[19] The parties, unsurprisingly, have differing interpretations of what constitutes doing business, however.

■ The corporate parties argue that the FTC must show that each moving company has "fairly extensive" contacts with D.C. in order to sustain jurisdiction for a cause of action not arising out of the company's activity in D.C. A somewhat higher standard should exist for such an unconnected cause of action than for one arising directly from the company's contacts with the forum district.[20] The corporate parties go on to contend that the companies must maintain a permanent office in D.C. in order to be subject to service. Corporate Parties' Memorandum, at 50 n. 76. The court finds this argument to be without merit; foreign corporations often have been found to be doing business in D.C. despite the lack of a permanent office. *E. g., Washington v. Hospital Service Plan,* 120 U.S.App.D.C. 211, 345 F.2d 105 (1965); *Frene v. Louisville Cement Co.,* 77 U.S.App.D.C. 129, 134 F.2d 511 (1943); *Stevens v. American Service Mutual Ins. Co.,* 234 A.2d 305 (D.C.Ct.App. 1967); *Key v. S. C. Johnson & Son, Inc.,* 189 A.2d 361 (D.C.Ct.App.1963). The corporate parties also contend that many of the contacts the moving parties might have with the District are maintained for the purpose of interacting with the federal government. They claim the "government contacts" principle protects them from the court's consideration of these activities in determining amenability to service.[21]

The FTC contends that the court should address the business purpose being served by the moving parties' presence in D.C. It suggests that the marketing or products in the District, through either solicitation of sales or shipment or products, can constitute doing business. *See Frene v. Louisville Cement Co.,* 77 U.S.App.D.C. 129, 134 F.2d 511 (1943); *Key v. S. C. Johnson & Son, Inc.,* 189 A.2d 361 (D.C.Ct.App.1963). Advertising within the District can be considered as a factor. *Payton v. Summit Loans, Inc.,* 253 A.2d 459 (D.C.Ct.App.1969). The FTC distinguishes two cases relied on

**19.** See *Payton v. Summit Loans, Inc.,* 253 A.2d 459, 460 n. 1 (D.C.Ct.App.1969).

**20.** While the parties cite no cases explicitly drawing the distinction, it appears implicit in several of the leading cases. *See Washington v. Hospital Service Plan,* 120 U.S.App.D.C. 211, 345 F.2d 105 (1965); *Byrd v. Norfolk & Western Ry.,* 194 A.2d 651 (D.C.Ct.App.1963); *Key v. S. C. Johnson & Son, Inc.,* 189 A.2d 361 (D.C.Ct.App.1963). *See generally* von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121, 1179 (1966).

**21.** The government contacts exception had its genesis in *Mueller Brass Co. v. Alexander Milburn Co.,* 80 U.S.App.D.C. 274, 152 F.2d 142 (1945), and its latest expression in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 813–14 (D.C.Ct.App.1976).

by the moving corporate parties [22] as hinging on the *plaintiffs'* complete lack of contacts with the forum state in those cases.[23] Here, it notes that the FTC has obvious contacts with the District.[24]

The court is faced with a somewhat difficult task in attempting to sort out the various claims of the parties. It appears that solicitation of sales or shipment of goods potentially can qualify as doing business. The necessary showing should be at least somewhat higher for an unconnected cause of action than for a cause of action arising directly out of a defendant's activities in the forum district. The government contacts exception potentially applies, depending on the purposes and functions served by those contacts. Within this framework the court can examine the situations of the moving companies to resolve what is essentially a factual question about sufficiency of the contacts of each company.

The moving corporate parties have submitted affidavits concerning the extent of their contacts with the District of Columbia. On the basis of these, they ask the court to conclude that no basis for personal jurisdiction over them exists. The court finds these affidavits insufficient. Some neglect to identify the dollar value of goods shipped to the District, some fail to state whether D.C. shipments are a substantial contribution to total sales, some are vague on the question of distributors, detail men, or salesmen and where they are located, and some fail to state conclusively whether any goods are sold in the District at all. From the information now before the court by way of these affidavits, the court preliminarily believes that at least some of these companies have sufficient contacts with the District to qualify as transacting business under 29 D.C.Code § 933i(c). The court nevertheless feels that additional discovery would be quite helpful to the court in making these determinations, and it is advised that the FTC has propounded certain interrogatories that could help to resolve this question.[25] The court therefore will permit this additional discovery and defer decision on this aspect of the corporate parties' motion to dismiss.

 With respect to one moving party, Fairmont Foods, there is no need to defer decision. Fairmont admits that it is authorized to do business in the District, has appointed a registered agent, and received service of process through that registered agent. This service is sufficient to bring Fairmont before the court. 29 D.C.Code § 933i(a). Fairmont contends, however, that section 933i(a) relates solely to manner of service, not amenability to service. In support of that proposition, Fairmont relies on one D.C. case [26] which held that the absence of a license to do business does not mean that a company is not in fact doing business, and on one Fourth Circuit case [27] not purporting to apply any laws of the District. The court does not find these compelling precedents for Fairmont's position. The language of section 933i(a) tracks closely that of section 933i(c), but no claim has been made that section 933i(c) does not relate to amenability to service. Accordingly, Fairmont's motion to dismiss on this ground will be denied.

**22.** *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 2652 (1971); *Seymour v. Parke Davis Co.,* 423 F.2d 584 (1st Cir. 1970).

**23.** *See* 423 F.2d at 587; *Lee v. Walworth Value Co.,* 482 F.2d 297 (4th Cir. 1973) (distinguishing *Ratliff* on ground of plaintiffs' lack of contact with forum district).

**24.** *But see Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 812 (D.C.Ct.App.1976) (plaintiff's activities in forum district cannot establish requisite contacts for personal jurisdiction).

**25.** The corporate parties have moved for a protective order as to these interrogatories on the general grounds advanced in their arguments on this question. The court will deny that motion for the same reasons it cannot grant their motion to dismiss at this time.

**26.** *Kelberine v. Societe Internationale, Etc.,* 124 U.S.App.D.C. 257, 363 F.2d 989, 993 (1966), *cert. denied,* 385 U.S. 989, 87 S.Ct. 595, 596, 17 L.Ed.2d 450 (1966).

**27.** *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745, 748 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 2652 (1971).

## II. FTC's Motion to Dismiss

The FTC parties move to dismiss the preenforcement actions concerning the LB and CPR programs. The court has identified four basic arguments advanced by the FTC in favor of this motion: (1) judicial review of the FTC's exercise of its powers of compulsory process is unavailable by way of preenforcement action where no notice of default has been issued; (2) even if judicial review potentially is available, the corporate parties have failed to meet the standards of the Abbott Labs trilogy; (3) the FTC itself must be dismissed because it has not waived sovereign immunity in this instance; and (4) sound reasons exist for the court to dismiss the preenforcement actions as a matter of discretion. For the reasons stated below, the court rejects the first three arguments and wishes to defer a decision on discretionary dismissal.

### A. Availability of Preenforcement Review

■ The FTC contends that judicial review of the validity of the Commission's exercise of its powers of compulsory process can be had only in an enforcement proceeding brought under section 9 or 10 of the FTC Act where no notice of default has been issued. See St. Regis Paper Co. v. United States, 368 U.S. 208, 226, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); Federal Trade Commission v. Claire Furnace Co., 274 U.S. 160, 174, 47 S.Ct. 553, 71 L.Ed. 978 (1927). The court will not deal extensively with this argument, as it was persuasively rejected by the Third Circuit in A. O. Smith v. Federal Trade Commission.[28] This court fully concurs with the reasoning of that decision on this issue. St. Regis and Claire Furnace must be considered in the context of the more recent Supreme Court decisions in the Abbott Labs trilogy.[29] As the Third Circuit noted:

The fundamental jural lesson flowing from Abbott Laboratories is this: a person aggrieved by final agency action may come to federal court for judicial review "so long as [a] no statute precludes such relief or [b] the action is not one committed by law to agency discretion." * * We have examined the FTC Act and find no clear and convincing evidence of a congressional intent to bar judicial review of final FTC orders under Section 6(b).

530 F.2d at 521. For these reasons the court concludes that preenforcement review potentially is available to the corporate parties in this situation.

### B. Application of Abbott Labs

The FTC also appears to argue that, even if judicial review potentially is available, the corporate parties no longer, if they ever did, meet the standards set forth in the Abbott Labs trilogy for a court's exercise of preenforcement jurisdiction.[30] Justice Harlan focused on two questions in Abbott Labs: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. 387 U.S. at 148–49, 87 S.Ct. 1507. The FTC notes that the hardship to the parties in awaiting judicial determination of their claims in an enforcement proceeding now is minimal. Since no notice of default has been issued, the corporate parties face no civil or criminal penalties for noncompliance. Indeed, the corporate parties no longer are on the horns of a dilemma in attempting to decide whether to comply or face stiff penalties; the risks of noncompliance are ephemeral.[31]

■ The problem with this approach is that Abbott Labs essentially involves a ripeness inquiry. See 387 U.S. at 148–49, 87

---

28. 530 F.2d 515, 519–21 (3d Cir. 1976).

29. Abbott Labs v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

30. It is not entirely clear to the court whether the FTC makes this as a separate legal argument or as an adjunct to its argument on discretionary dismissal. The court will deal with it as a separate legal argument and in connection with discretionary dismissal.

31. See A. O. Smith v. FTC, 417 F.Supp. 1068, 1082–85 (D.Del.1976).

S.Ct. 1507. There no longer exists serious doubt as to whether these preenforcement actions are ripe in the *Abbott Labs* sense. Enforcement actions have been commenced; the issues have been concretely framed. This court's subject matter jurisdiction is established by 28 U.S.C. §§ 1331, 1337. For these reasons there is no point in the courts reconsidering the hardship issue under the *Abbott Labs* analysis, and no reason to dismiss on this ground.

### C. Sovereign Immunity

■ The FTC has moved to dismiss itself as a defendant in the preenforcement actions on the ground that sovereign immunity bars a suit against a federal agency *eo nomine* unless Congress has granted such a right against the agency. The FTC claims that here no such authorization has occurred. While the FTC may be correct in its statement of the law,[32] it is incorrect in asserting that no Congressional authorization for such a suit exists. In *Scanwell Laboratories, Inc. v. Shaffer*,[33] the District of Columbia Circuit held that the judicial review provisions of the Administrative Procedure Act serve to waive sovereign immunity:

> It seems axiomatic to us that one must imply, from a statement by the Congress that judicial review of agency action will be granted, an intention on the part of Congress to waive the right of sovereign immunity; any other construction would make the review provisions illusory.[34]

While the APA should not be interpreted to constitute a waiver of sovereign immunity in suits seeking money damages against the United States,[35] in the context of this case the court is convinced that the judicial review provisions of the APA have waived the FTC's sovereign immunity claim, and the court accordingly rejects that argument.

### D. Discretionary Dismissal

Finally, the FTC suggests that the court should exercise its discretion to dismiss the preenforcement actions. It asserts that the pending enforcement actions present a wholly adequate forum for the corporate parties to raise any defenses and claims they might have concerning the LB and CPR programs.[36] It views the preenforcement actions as unnecessary baggage for the court to carry in light of the statutory enforcement actions. The FTC assures the court that no prejudice to the corporate parties will flow from a dismissal.[37]

The corporate parties oppose on several grounds. First, since all the enforcement and preenforcement actions have now been consolidated before this court, no risk of duplicative judicial efforts exist. Second, they prefer consideration of the issues raised by the LB and CPR programs within the context of a normal civil action, in which no doubts exist as to discovery or judicial review. Finally, the corporate parties suggest that there simply is no need to dismiss at this point of the proceedings, and that the court should avoid needless rulings.

In light of the fact that both the preenforcement and enforcement actions have been consolidated, and in light of the fact that counsel for the FTC stated in oral argument that the Commission does not seek an·immediate decision on this motion, the court will defer consideration of the

---

**32.** *E. g., Economou v. Department of Agriculture*, 535 F.2d 688, 690 (2d Cir. 1976); *Midwest Growers Coop. Corp. v. Kirkemo*, 533 F.2d 455, 465 (9th Cir. 1976).

**33.** 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

**34.** *Id.* at 874.

**35.** *See Scanwell Labs. Inc. v. Thomas*, 172 U.S. App.D.C. 281, 521 F.2d 941, 948 (1975).

**36.** *See Emerson Elec. Co. v. FTC*, Civ. No. 74–746 (D.D.C. July 21, 1976) (Pratt, J.) (preenforcement claims may be raised as defenses in enforcement proceeding).

**37.** The court tends to agree with the FTC on this point. Discovery would be narrowly circumscribed in either action, so the corporate parties would lose nothing by way of discovery. The other identified concern of the corporate parties—the scope of the court's review of the programs—promises to be an important issue regardless of in which action·the court considers it.

motion to dismiss.[38] At a later time the court may be in a better position to determine this issue, and later rulings by this court on other issues may render the court's task simple indeed. By deferring consideration of this motion, the court will be able to consider both summary judgment motions pending in these actions—and all arguments on the merits contained therein. Thus the court will deny the FTC's motion to dismiss on the three legal grounds asserted and defer consideration of a discretionary dismissal.

### III. Comptroller General's Motion to Dismiss

The Comptroller General moves to dismiss the preenforcement actions on the ground that the actions of the Comptroller General pursuant to the Federal Reports Act, 44 U.S.C. § 3512, are not judicia'ly reviewable.[39] The Comptroller General presents two primary arguments in support of that conclusion: (1) Congress intended to preclude judicial review of the Comptroller's decisions under the Act; and (2) the corporate party plaintiffs have an adequate alternative remedy in court. Because the court rejects both these arguments for the reasons stated below, the Comptroller's motion to dismiss will be denied.

### A. Congressional Intent to Preclude Review

The Comptroller notes that the corporate parties claim a right to judicial review of the LB and CPR program orders under the applicable provisions of the Administrative Procedure Act. 5 U.S.C. § 701–06. He contends that the legislative history of the Federal Reports Act demonstrates a Congressional intent that judicial review of his actions under the statute be precluded.[40] The Comptroller bases his conclusion that Congress took the unusual step of precluding judicial review on two major grounds. First, he notes that the purpose of the Act was to prevent the "delay and obstruction" that occurred when the Office of Management and Budget, advised by the industry-oriented Business Advisory Council, held the clearance function for independent regulatory agencies' special reports. Congress transferred this clearance power to the General Accounting Office to prevent the undue impairment of independent regulatory agencies' data collection efforts. Although the Comptroller correctly discerns the motivation stirring Congress to passage of this statute,[41] he fails to draw a viable link between this policy goal and a statutory preclusion of judicial review. Second, the Comptroller argues that since the GAO has only 45 days in which to perform the review function, after which the agency may proceed,[42] the conclusion that Congress intended to preclude judicial review is further enhanced.

The Comptroller admits, however, as he must, that there exists a presumption in favor of judicial review. This strong presumption can be overcome only "upon a showing of 'clear and convincing evidence' of a contrary legislative intent . . . ."[43] The Comptroller has failed to meet this heavy burden in this instance. At

---

**38.** The court need not defer consideration of whether to dismiss preenforcement claims relating solely to the 1973 LB orders. As Judge Schwartz noted, those claims are moot. *A. O. Smith v. FTC*, 417 F.Supp. 1068, 1074 (D.Del. 1976). This conclusion does not affect claims challenging the 1974 LB orders that relate to the development and implementation of the entire LB program, however.

**39.** The Comptroller has moved in the alternative for summary judgment, but the court prefers to consider the other issues raised by the Comptroller at the same time as it considers the other pending summary judgment motions in these actions.

**40.** The APA review provisions do not apply to the extent that "statutes preclude judicial review." 5 U.S.C. § 701(a)(1).

**41.** *See* H.R. Rep. No. 624, 93d Cong., 1st Sess. 31 (1973) (Conference Report), U.S.Code Cong. & Admin. News 1973, p. 2523.

**42.** 44 U.S.C. § 3512(d).

**43.** *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), *quoting Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

best, a court could indirectly imply from Congress' obvious desire to prevent undue delays an intent to protect the Comptroller's actions from judicial scrutiny. This tenuous link, however, does not constitute clear and convincing evidence of Congressional intent to preclude judicial review; Congress was silent on the matter, and the presumption of reviewability must apply.

### B. *Adequate Alternative Remedy*

 The Comptroller also contends that the corporate parties have an adequate alternative remedy in court against the FTC. Agency action is made reviewable under the APA when "there is no other adequate remedy in a court . . . ."[44] This argument relies on the Comptroller's conception of the goals the corporate parties seek in pursuing this litigation. Since the corporate parties seek to prevent implementation of the LB and CPR programs and raise many of the same issues against the FTC that they raise against the GAO, the Comptroller reasons that a remedy against the FTC would be sufficient. He suggests that the ultimate relief sought by the corporate parties, a prohibition on the use of the LB and CPR forms, can be obtained from the FTC alone.

The court is not much impressed by this argument. The Comptroller makes no claim that there is another adequate proceeding in court by which the corporate parties can obtain direct review of the Comptroller's actions. Only indirectly could the corporate parties challenge the actions of the Comptroller if he is dismissed from the preenforcement actions. Nothing in

the APA precludes review of the actions of two agencies that acted in concert merely because relief may be available against one of them.[45] Additionally, it makes sense for the court to have before it the agency whose actions are challenged so that its views may be fully presented.[46] Moreover, relief against the FTC certainly does not necessarily mean relief against the Comptroller General; for example, if the court should decide that the corporate parties should prevail on an issue unrelated to the Federal Reports Act, then the court would need make no determination on the question of the Comptroller's actions. In all, the Comptroller has not presented a convincing case for dismissal on the ground that an adequate alternative remedy in court exists.

### IV. *FTC's Motion for More Definite Statement of Counterclaims*

The FTC moves the court to require a more definite statement of the counterclaims asserted by the corporate parties in the enforcement actions. The corporate parties, in their answer to the Commission's enforcement petition, have incorporated as counterclaims all claims asserted by all parties in the preenforcement actions.[47] The FTC objects to this shotgun approach[48] to pleading counterclaims on several grounds, and desires a more definite statement before framing a responsive pleading.

First, the FTC argues that it is unclear whether the corporate parties intend to do more than assert affirmatively their claims concerning the validity of the actions taken by the FTC and the GAO. If not, the

---

**44.** 5 U.S.C. § 704.

**45.** The Comptroller claims, however, that section 704 requires only an adequate alternative remedy, not necessarily an adequate alternative remedy against the same party. He cites for this proposition no cases dealing directly with this question, though, and the court feels that the adequacy of the alternative remedy necessarily is partly determined by whether it can be obtained against the same party.

**46.** Cf. *Air Products & Chemicals, Inc. v. United Gas Pipe Line Co.*, 503 F.2d 1060, 1062 (Temp. Emer.Ct.App.1974).

**47.** Preenforcement plaintiffs incorporate all claims they have asserted, while respondents not involved in the preenforcement cases incorporate all claims of all preenforcement complaints.

**48.** The FTC asserts that there are 44 preenforcement actions and 30 intervention complaints in the LB litigation, and 23 preenforcement actions and 24 intervention complaints in the CPR litigation.

Commission reasons, these are simply improperly denominated defenses and require no reply; if so, the FTC will have to respond. There is little doubt in the court's mind that the corporate parties' counterclaims seek affirmative relief against the FTC and GAO in the form of declaratory judgments and permanent injunctions.

Second, the FTC contends that the counterclaims resurrect dead issues, insofar as they seek to assert claims not addressed by the corporate parties in their pleadings before this court. Although the FTC believes that claims not raised in the partial summary judgment motion or discovery outline have been waived, the court has decided to the contrary. Order of November 4, 1976.

Finally, the FTC argues that the counterclaims are vague and ambiguous. Many of the corporate parties were not involved in the preenforcement actions, and wide differences in those complaints exist. Many could not have joined in all the claims because of factual differences, failure to exhaust administrative remedies, and other reasons. The FTC's objection to the validity of the counterclaims, however, should not be an important factor in a motion for a more definite statement. If some parties cannot sustain certain claims for the reasons mentioned by the Commission, those arguments can be raised by the FTC in its responsive pleading.

The court is of the opinion, however, that in some respects the counterclaims fail as "short and plain statement[s]" of the claims asserted.[49] Where such a large number of preenforcement complaints and motions to intervene have been filed, at the least the corporate parties should present a single list of all the claims they wish to assert as counterclaims, rather than put the burden of finding and answering each of the preenforcement complaints on the Commission. The court would itself prefer to work with a single listing of all counterclaims. The court hopes that the corporate parties will exercise judgment in compiling this single list, so that identical claims are consolidated and obviously unmeritorious or moot claims (such as those concerning only the 1973 LB orders) are eliminated.